464 So.2d 77 (1985)
James MHOON
v.
STATE of Mississippi.
No. 55645.
Supreme Court of Mississippi.
February 13, 1985.
*78 Chatwin M. Jackson, Jr., Kosciusko, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by William S. Boyd, III and Marvin L. White, Jr., Sp. Asst. Attys. Gen., Jackson, for appellee.
En Banc.
PRATHER, Justice, for the Court:
James Mhoon, a sixteen year old, was indicted for the capital murder of William Denton Lawson in Grenada County. By reason of two prior burglary convictions, Mhoon was charged as an habitual offender pursuant to Miss. Code Ann. § 99-19-81 (Supp. 1982). Upon motion of the appellant, venue was changed to Attala County. Mhoon pled guilty to the capital murder charge and, following a sentencing hearing, a jury returned the death sentence. From this death sentence, Mhoon appeals assigning thirteen errors as grounds for reversal. For the reasons stated below, this Court agrees that reversible error occurred in the proceedings in the trial court. We reverse and remand for a new sentencing hearing.
The assigned errors which require discussion are as follows:
(1) Whether the appellant was deprived of his life by a fair and impartial jury.
(2) Whether the trial court erred in preventing the jury from being informed that a life sentence for Mhoon would be without parole in view of his habitual offender status while at the same time permitting the state to admit evidence of prior burglary convictions for impeachment purposes.
(3) Whether the testimony of co-indictee Wofford was obtained through coercion and therefore violated the appellant's right to a fundamentally fair, non-arbitrary sentencing proceeding.
(4) Whether the imposition of the death penalty on a youth who was sixteen at the time of the crime constitutes cruel and unusual punishment.
(5) Whether the trial court erred in permitting the introduction of incriminating statements made by the appellant in response to a question from a deputy sheriff/jailer.
*79 (6) Whether the appellant's death sentence constitutes misapplication of the statutory provision that the offense committed was especially heinous, atrocious and cruel.

I.
On November 9, 1982, around 9:00 o'clock p.m., 18 year-old Danny Ray Wofford and 16 year-old James Mhoon left Bruce, MS in an automobile to go to Calhoun City. On the way, Mhoon suggested to Wofford that they rob a store; Wofford agreed and fashioned two masks out of a croker sack. Mhoon and Wofford picked up two friends, brothers Keith and Leroy Gibson, at Denton Town near Calhoun City and proceeded to Grenada.
Upon arriving in Grenada, Wofford, Mhoon and the Gibson brothers went to a club called "The Rose." Around 9:30 p.m. Mhoon and Wofford left the club, telling the Gibson brothers that they were going to see some girls. However, Wofford and Mhoon rode around Grenada searching for a store to rob. They eventually decided to hit "Lawson's Jiffy Mart" at the intersection of Hwy. 8 and 51.
Mhoon parked the car around the side of the store. Leaving their masks on the floorboard of the car, Wofford and Mhoon walked into the store with Wofford carrying a .22 caliber pistol.
William D. Lawson, his wife, Betty Lawson, and Charles Kenwright were inside the store, standing behind the counter. Wofford announced to them that this was a stickup, but the people didn't respond. Mhoon grabbed the gun from Wofford and repeated that this was a stickup. Mhoon told them to take the money out of the register. Mr. Lawson removed the money from the register and laid it on the counter. Wofford walked up to the counter, picked up the money and put it in his pocket.
At this point the facts become disputed. Appellant Mhoon testified at the hearing that, after Wofford retrieved the money from the counter, Wofford took the gun away from Mhoon and directed Mr. and Mrs. Lawson and Kenwright to go into the back room and to lay face down on the floor. According to Mhoon, Wofford shot Kenwright, and then shot Mrs. Lawson. Wofford then told Mhoon to take the gun and said "the best witness is a dead witness" and told Mhoon to shoot Mr. Lawson. Mhoon admitted shooting Mr. Lawson once in the head.
To the contrary, Wofford testified at the sentencing hearing that it was Mhoon who directed the trio to go into the storage room and to lay down. According to Wofford, Mhoon then shot Kenwright, Mr. Lawson and Mrs. Lawson. At the time of Mhoon's sentencing hearing, Wofford had pled guilty to the charge of murder of Mrs. Lawson and received a life sentence. Wofford had also pled guilty to the murder of Charles Kenwright, Jr. and received a life sentence. In addition, Wofford was charged with the murder of William Lawson, but no plea had been entered to the charge and the case had been continued.

II.

JURY SELECTION
During the selection of the jury, the trial counsel objected to the excusal of jurors for cause under the announced rule of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Appellant assigns several errors regarding these factual occurrences. This Court does not address all of these assignments since a retrial is ordered.
Two facets in jury composition require discussion: (A.) whether the trial court erred in failing to excuse for cause venire-persons who were employed in law enforcement or related by blood or marriage to law enforcement officials and (B.) whether the failure to disclose by juror Cain that she was related by marriage to a former policeman violated the appellant's rights.
The first issue raised by this assignment is whether there is a constitutional violation of Article 3, Section 26 of the Mississippi Constitution which guarantees to an accused in all criminal prosecutions the right to a "trial by an impartial jury... ." *80 Although the United States Constitution, Amendment VI, contains a similar guarantee, our decision today is grounded upon the independent and adequate remedies provided by the jurisprudence of this state. Adams v. State, 72 So.2d 211 (Miss. 1954) (Right to trial by impartial jury as guaranteed by Miss. Const. Section 26 is the foundation of our form of government); see also Cook v. State, 90 Miss. 137, 43 So. 618 (1907); Green v. State, 72 Miss. 522, 17 So. 381 (1895). The right to a fair and impartial trial is further secured to the citizens of this state by Art. 3, Section 14, Miss. Constitution which provides that "[N]o person shall be deprived of life ... except by due process of law." Brooks v. State, 209 Miss. 150, 46 So.2d 94 (1950).

IIA.
The composition of the jury in this case reflects a most unique and novel group. According to the record, the jury pool in this case was comprised of a 26 person special venire (all of whom were considered for seats on the jury) and a regular venire composed of 38 people (only 26 persons were considered for seats on the jury). After challenges for cause, both venires yielded the pool of 39 venirepersons: 12 of these 39 were either policemen or related by blood or marriage to a current or former police officer, although one of these 12 (Juror Cain) failed to reveal her police connection on voir dire.
Of the twelve jurors selected to serve, Officer Troy Steed, a policeman in uniform, served as foreman of this jury. Five other jurors were related by blood or marriage to law enforcement members as follows: (1) Deniece Moore's father-in-law was a retired highway patrolman and a former justice court judge for eight years, (2) Mrs. Hodges' nephew was currently a highway patrolman, (3) Mrs. Robertson's son was currently a justice court judge and a nephew was currently a highway patrolman, (4) Clancy Philley was another who was related but his response cannot be identified in the record as to whether his relative was a step brother or first cousin who was a policeman. Additionally (5) Mrs. Cain failed to respond that her brother-in-law had been a police officer some ten years before.
The defense counsel exhausted all available peremptory challenges during the course of the jury selection. Mhoon's counsel moved to have the law enforcement-connected persons excused for cause, but this motion was denied by the court because each stated that the relationship would not influence their decision in this case and that they could render a fair decision based upon the evidence and the court instructions as to the law. This ruling by the trial court is assigned as error.
This assignment of error raises a novel issue which  were it not for the inordinate abundance of law enforcement persons and their relatives on the jury list in this case  would have little merit. Of the 39 venire-persons considered by the court and not excused for cause, 12 of them were either police officers or related by blood or marriage to current or former police officers. The statistical probability of this situation seems somewhat remote. The unlikelihood of this situation occurring is supported by the fact that there are no cases in Mississippi holding explicitly one way or the other as to whether policemen or blood/marriage relations of current or former police officers can be excused for cause. It would appear that the reason this issue has never surfaced previously is that in a normal jury pool  containing a couple of police-related persons  defense counsel simply exercises some of his peremptory challenges and the problem disappears. In this case, Mhoon's counsel would have had to use every single one of his peremptory challenges just to exclude all the persons connected with the police force. Even if he had wanted to do this, Mhoon's attorney could not have done so as Juror Cain had not properly identified her connection to the police on voir dire.
Fundamental to our concept of a fair trial is the right of a criminal defendant to have an impartial jury. The jury's function in our criminal justice system is *81 that of factfinding, and it is only the jury that can impose the death sentence. Williams v. State, 445 So.2d 798, 811 (Miss. 1984). Courts have zealously guarded against any testimony, argument, evidence, procedure, or any other thing that dilutes the responsibility imposed on a jury or that adulterates its neutral and impartial decision. Wiley v. State, 449 So.2d 756, 762 (Miss. 1984); Howell v. State, 411 So.2d 772 (Miss. 1982).
All along the history of our jurisprudence are strong and eloquent admonitions by the great jurists of the state to the courts to preserve the juries of the country spotless and pure to the utmost possibility. A superb public sentiment rigidly imposes that duty on all the courts. There is no power invested with the right to take away the life or the liberty of a citizen. The law prescribes certain rules of action, and declares that their violation shall work the forfeiture of the life or the liberty of the violator. And the only function of the courts in that behalf is to ascertain, by the strict application of the rules of law, whether the accused has, by his own act, forfeited his own life or his liberty, and to execute the impartial finding. It is not worth while to repeat again the oft-repeated ruling of the court that a verdict of a jury embracing one disqualified member cannot be allowed to stand in a case of this sort.
Jeffries v. State, 74 Miss. 675, 21 So. 526 (1897).
Respect for the sanctity of an impartial trial requires that courts guard against even the appearance of unfairness for "public confidence in the fairness of jury trials is essential to the existence of our legal system. Whatever tends to threaten public confidence in the fairness of jury trials, tends to threaten one of our sacred legal institutions." Lee v. State, 226 Miss. 276, 83 So.2d 818 (1955).
The closest thing to a statement concerning the propriety of challenging police officers or their relatives for cause is contained in Odom v. State, 355 So.2d 1381 (Miss. 1978), where it is stated:
Such examination in this case would have, in all probability, established that the juror's brother was in fact a policeman in the area where the crime for which the appellant was being tried occurred, thus giving him a rational basis from which to challenge the jury peremptorily, if not for cause.
355 So.2d at 1383.
This pronouncement in Odom certainly does not lay down a hard and fast rule that law enforcement officers or their relatives can be challenged for cause. Indeed, in the normal case  with a normal distribution of law enforcement officers and their relatives in the jury pool  there is no reason why, if left unchallenged peremptorily, an officer or an officer's relative should not serve on a jury if otherwise qualified to follow the law and the evidence. See Cook v. State, 134 So.2d 151 (Miss. 1961); Gardner v. State, 110 So. 589 (Miss. 1926). In this particular case, however, the sheer number of law enforcement-connected persons in the jury pool, as well as persons selected as jurors, has worked a great hardship on Mhoon. Given the statistical aberation in the jury pool, the judge could have done several things to ameliorate its prejudicial effect: (1) he could have afforded counsel additional peremptory challenges, (2) he could have increased the size of the available venire as well as affording additional challenges, or (3) he could have sustained at least some of the challenges for cause. A.B.A., Standards Relating to Juror Use and Management (1983): Standard 9(b) & (g) at 83, 85-86 ("trial judge should have the authority to allow additional peremptory challenges when justified"); Standard 3(c) at 36, 38 ("should ensure that all cognizable groups are represented ... in a fair and reasonable relationship to the number of such persons in the community"); Standard 8 at 80 ("limiting the number of peremptory challenges lend[s] added importance to removals for cause").
*82 This Court does not hold that a person engaged in law enforcement, or related by blood or marriage to one engaged in law enforcement, should be per se excluded from jury service. However, in a unique factual situation such as this unusual case, the opportunity for undue influence over the opinions of other jurors was too great a risk. A uniformed policeman served as foreman of the jury. This Court holds that under this novel situation the coercive inference on the jury precludes this Court from saying that this appellant was afforded his constitutional right of a trial by an impartial jury secured by Art. 3, § 26 of our Constitution. Additionally, due process of law guaranteed by our Constitution under Art. 3, § 14 requires a retrial. This Court, therefore, remands for a new sentencing hearing for this reason.

IIB.
This Court does not address the effect of Juror Cain's participation on the jury. However, it is needed to note that Juror Cain failed to respond to defense counsel's voir dire question requesting that persons who are related by blood or marriage to current or former police officers identify themselves.
Juror Cain did not reveal the fact of her brother-in-law's former employment as a policeman as required by Odom v. State. 355 So.2d 1381 (Miss. 1978). Inasmuch as a rehearing is required at which Juror Cain's participation will not reoccur, this Court does not reach the issue of the correctness of the trial court's ruling on this question.

III.
Although reversal of this case is already ordered for one reason, this Court addresses such other assigned error under its supervisory duty to give instruction only on assigned matters that might reoccur.
Appellant assigns as error the introduction, over defense objection, of Mhoon's two prior burglary convictions for the purpose of impeachment. Appellant argues that the introduction of non-violent felonies at the sentencing phase is precluded by Miss. Code Ann. § 99-19-101 (Supp. 1982).
Section 99-19-101(5)(b) limits the use of prior convictions for the purpose of establishing aggravating circumstances to prior convictions of another capital offense or of a violent felony, but it in no way alters the established rule of evidence which permits cross-examination of any witness as to previous convictions. Thornton v. State, 313 So.2d 16 (Miss. 1975); Miss. Code Ann. § 13-1-13 (1972). Appellant's prior burglary convictions were not introduced in order to establish aggravating circumstances, but rather for the limited purpose of impeachment. A person's criminal record may be used to impeach his credibility whether the convictions be misdemeanors or felonies. Ellis & Williams, Mississippi Evidence, § 4-6, at 39-40. The assignment of error premised upon the impropriety of prior convictions for impeachment is thus without merit.
Prior to trial, the prosecution filed a motion in limine to prevent any mention or indication to the jury that if the death penalty was not imposed Mhoon would be sentenced as a recidivist to life without parole. As a result of this, the prosecution  while preventing the jury from learning that a life sentence would be without parole  managed to get before the jury Mhoon's prior non-violent convictions under the aegis of impeachment so that, although the prior convictions were not used as the basis of a specific aggravating circumstance, they were nonetheless before the jury. Mhoon claims that the prosecution cannot have it both ways and either it was error to allow the non-violent felony convictions for impeachment purposes, or it was error to prevent the jury from being told that if they returned a life sentence it would be life without parole.
Appellant's argument overlooks a fundamental point. There was no way of knowing that Mhoon would be sentenced as a recidivist at the time in question.
Under the procedures inaugurated by our recidivism statutes, sections 99-19-81 *83 and -83, a separate post-conviction hearing is required. Rule 6.04, Unif.Crim.R. of Cir.Ct. Practice; Adams v. State, 410 So.2d 1332, 1334 (Miss. 1982). At such hearings the state is required to prove that the various statutory requisites have been met and that the defendant is in law eligible for sentencing as a recidivist. As the reports of our decisions reflect, the state does not always prevail on this point. See, e.g., McLamb v. State, 456 So.2d 743 (Miss. 1984); Debussi v. State, 453 So.2d 1030 (Miss. 1984).
Whether Mhoon would ultimately be sentenced as a recidivist was a matter legally just as speculative as whether he might some day be paroled. We forebade argument about possible parole in Williams v. State, 445 So.2d 798, 812-813 (Miss. 1984). We hold here that the trial judge correctly prohibited defense counsel from presenting testimony speculatively as to whether Mhoon could be sentenced as a recidivist to life without parole.
This Court holds that no error was committed in this ruling.

IV.

WHETHER THE TESTIMONY OF CO-INDICTEE WOFFORD WAS OBTAINED THROUGH COERCION AND THEREFORE VIOLATED THE APPELLANT'S RIGHT TO A FUNDAMENTALLY FAIR, NON-ARBITRARY SENTENCING PROCEEDING.
This assignment of error challenges the right of the prosecutor to secure the testimony of a co-indictee in exchange for a life sentence. Appellant contends that the plea bargaining agreement constitutes an "extreme form of coercion against Danny Wofford" which affected the appellant's sentencing hearing.
Thigpen v. Roberts, ___ U.S. ___, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984), upon which appellant relies, dealt with an entirely different situation. There, the prosecutor pursued and obtained a conviction for vehicular homicide in circuit court after the case had already been adjudicated in justice court for a lesser offense growing out of the same accident.
This point is discussed in Bell v. Watkins, 692 F.2d 999, 1010 (5th Cir.1982). The question is primarily one of fact  has the defendant proved that his co-indictee was coerced to the point where the co-indictee's credibility is put in substantial doubt? Here there is no such proof in the record, and we, therefore, conclude there was no error in the admission of the co-indictee's testimony.
This assignment of error is meritless.

V.

WHETHER THE IMPOSITION OF THE DEATH PENALTY ON A YOUTH WHO WAS 16 AT THE TIME OF THE CRIME, CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.
Appellant argues that the imposition of the death penalty on a defendant who was a minor at the time of the crime constitutes cruel and unusual punishment. This question, however, was previously answered by this Court in Cannaday v. State, 455 So.2d 713 (Miss. 1984).
In Cannaday, this Court noted that the United States Supreme Court had declined to address this very issue in Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) and stated that "in light of the Supreme Court's silence on this issue, the problem of when a juvenile can be punished the same as an adult remains with the Legislature." 455 So.2d at 725. Accordingly, this Court held that the fact that defendant was sixteen at the time of the crime was not in itself grounds for reversal of a death sentence. 455 So.2d at 725.

VI.

WHETHER THE TRIAL COURT ERRED IN PERMITTING THE INTRODUCTION OF INCRIMINATING STATEMENTS MADE BY THE APPELLANT IN RESPONSE TO A QUESTION FROM A DEPUTY SHERIFF/JAILER.
*84 At the sentencing hearing, after the appellant's case in chief during which the appellant took the stand in his own behalf, the State called Attala County Deputy Sheriff and Jailer Jimmy French in rebuttal. Over defense objection, French was permitted to testify regarding a statement made by the appellant while confined in the Attala County Jail under the following circumstances.
BY COUNSEL SNYDER:
Q. I want to direct your attention to August 29, 1983, at about five minutes after midnight in the County jail  Attala County jail, in the presence of the Defendant, James Mhoon, and Jimmy Kirkwood and ask if a conversation took place among the three of you.
A. Yes, sir, it did.
Q. Tell how that happened, please.
A. All right. I was making a security jail check and prisoner Kirkwood asked me to make a phone call to see about getting out of jail and about doing his time, so prisoner Mhoon advised Jimmy Kirkwood that he shouldn't worry about his little time, that "Shit, he was looking at life or possibly the gas chamber."
Q. Was anything said to Mhoon?
A. Jimmy Kirkwood asked what did he do.
Q. What did Mhoon say?
A. James Mhoon said, `We killed them.', and spontaneous, I asked prisoner Mhoon, `Who did you kill?' And, he stated, `I killed her. I shot her once and she wasn't dead. Then I shot her again with a twenty-two caliber pistol.'
The question presented is whether the introduction of this statement violated appellant's Fifth and Sixth Amendment rights to counsel.
In Cannaday v. State, 455 So.2d 713 (Miss. 1984), this Court held that the admission during rebuttal of an incriminating statement made by the appellant in response to a question from a deputy sheriff/jailer violated the appellant's Sixth Amendment right to counsel and required reversal of the sentencing phase. 455 So.2d at 720-724. We hold, consistent with our opinion in Cannaday, that the admission of that portion of Mhoon's statement given in response to Deputy French's question "Who did you kill" was error. Therefore, upon remand, testimony of French regarding this portion of Mhoon's statement should be excluded.

VII.

WHETHER THE APPELLANT'S DEATH SENTENCE CONSTITUTES MISAPPLICATION OF THE STATUTORY PROVISION THAT THE OFFENSE COMMITTED WAS ESPECIALLY HEINOUS, ATROCIOUS AND CRUEL.
Three questions are raised by this assignment of error. The first is whether the "especially heinous, cruel or atrocious" provision is so vague and overbroad as to violate the United States Constitution. This Court has previously determined that it is not. Billiot v. State, 454 So.2d 445 (Miss. 1984); Coleman v. State, 378 So.2d 640 (Miss. 1979); Washington v. State, 361 So.2d 61 (Miss. 1978).
The second question raised is whether the evidence in the case sub judice was insufficient to warrant the submission of "heinous, atrocious or cruel" as an aggravating circumstance. In Gilliard v. State, 428 So.2d 576 (Miss. 1983), the appellant and his accomplice, robbed a package liquor store and during the course of the robbery the appellant shot the proprietor once in the chest with a sawed-off shotgun. This Court held that under such facts the question of whether or not the murder was "heinous, atrocious or cruel" was properly submitted to the jury. 428 So.2d at 586. Gilliard and the case sub judice are factually indistinguishable; therefore, the submission of "heinous, atrocious or cruel" as an aggravating circumstance in the case sub judice was proper.
In Coleman v. State, 378 So.2d 640 (1979), this Court adopted the interpretation of the Fifth Circuit in Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978) in which that Court held that the language "heinous, atrocious, or cruel" was intended *85 to include "those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily tortious to the victim." 378 So.2d at 648, quoting 578 F.2d at 611. Appellant argues that the failure to instruct the jury of the construction to be given the statutory language "especially heinous, atrocious, or cruel" constitutes error.
In Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), the United States Supreme Court mandated that states "must channel the sentencer's discretion by clear and objective standards that provide specific and detailed guidance, and that make rationally reviewable the process for imposing a sentence of death." 446 U.S. at 428, 100 S.Ct. at 1764. Thus, the Court held invalid a Georgia sentencing procedure because juries were not instructed as to the meaning of Georgia's statutory language.
Absent a requirement that the jury be instructed as to the specific meaning of "especially heinous, atrocious or cruel" the mandate of Godfrey is not met since (a) jurors are unlikely to have had previous sentencing experience and (b) the statutory language "heinous, atrocious or cruel" has been given a variety of interpretations by different states.
While reversal of this case is predicated on other grounds, we recommend to the bench that in order to be adequately guided in deliberation, a jury considering whether to impose the death penalty on the basis of the aggravating circumstance "especially heinous, atrocious, or cruel" should be informed of the construction given that language by this Court in Coleman, supra. See State v. Sonnier, 402 So.2d 650, 659 (La. 1981).
REVERSED AND REMANDED FOR A NEW SENTENCING HEARING.
PATTERSON, C.J., and DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
WALKER and ROY NOBLE LEE, P.JJ., dissent.
HAWKINS, J., not participating.
WALKER, Presiding Justice, dissenting:
I dissent from the holding in the majority that the lower court erred in allowing Deputy Sheriff French to testify about a conversation involving James Mhoon, another inmate and himself, which was as follows:
BY COUNSEL SNYDER:
Q. I want to direct your attention to August 29, 1983, at about five minutes after midnight in the County jail  Attala County jail, in the presence of the Defendant, James Mhoon, and Jimmy Kirkwood and ask if a conversation took place among the three of you.
A. Yes, sir, it did.
Q. Tell how that happened, please.
A. All right. I was making a security jail check and prisoner Kirkwood asked me to make a phone call to see about getting out of jail and about doing his time, so prisoner Mhoon advised Jimmy Kirkwood that he shouldn't worry about his little time, that "Shit, he was looking at life or possibly the gas chamber."
Q. Was anything said to Mhoon?
A. Jimmy Kirkwood asked what did he do.
Q. What did Mhoon say?
A. James Mhoon said, `We killed them', and spontaneous, I asked prisoner Mhoon, `Who did you kill?' And, he stated, `I killed her. I shot her once and she wasn't dead. Then I shot her again with a twenty-two caliber pistol.'
This was an uncoerced, voluntary confession by Mhoon that he killed William Denton Lawson. I feel that it was admissible for the same reasons that I stated in my dissent in Cannaday v. State, 455 So.2d 713 (Miss. 1984).
I am also of the opinion that the defendant did not show any prejudice as required by Odom v. State, 355 So.2d 1381 (Miss. 1978) resulting from the fact that a number *86 of the jurors were either policemen or related by blood or marriage to a current or former police officer or that one juror failed to reveal her police connection.
I would affirm the judgment of the lower court.
ROY NOBLE LEE, P.J., joins in this dissent.