# IN THE COURT OF APPEALS 12/03/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-KA-00856 COA


**DANYEL L. CLEMONS**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. HONORABLE MARCUS D. GORDON

COURT FROM WHICH APPEALED: NESHOBA COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT:

JOHNNIE E. WALLS, JR.

LYNDA CAROL ROBINSON

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL BY: DEIRDRE MCCRORY

DISTRICT ATTORNEY: HONORABLE J. KENNEDY TURNER

NATURE OF THE CASE: MURDER

TRIAL COURT DISPOSITION: CONVICTED OF MURDER AND SENTENCED TO LIFE IN PRISON

BEFORE FRAISER, C.J., KING, AND PAYNE, JJ.

KING, J., FOR THE COURT:

Danyel L. Clemons was convicted of murder in the Neshoba County Circuit Court and sentenced to life in prison. He appeals his conviction, contending that the trial court's appointment of the jury foreman and the denial of a *Batson* challenge foreclosed his right to a fair and impartial trial. We agree in part, and therefore, reverse and remand for a new trial.

FACTS

On December 22, 1992, Clemons, a black male, fatally shot Kevin Tolbert, a white male, after a verbal and physical confrontation occurred between the two men. The confrontation began after Clemons attempted to return a carburetor that he had purchased at Tolbert's auto salvage business. Tolbert told Clemons that he could not refund the money for the carburetor without a receipt; however, Clemons could exchange the part. One of Tolbert's employees and Clemons searched the salvage yard for a replacement, but did not find one. Clemons then demanded a refund without a receipt, and Tolbert refused again, stating store policy. The two men began to argue, and Tolbert was said to have called Clemons a "nigger" during the exchange of harsh words and profanities. During the argument, Tolbert asked Clemons to leave the salvage yard immediately, or he would call the police. However, Clemons did not leave, and the two men carried the argument outside where they wrestled on the ground until a bystander broke up the fight. Thereafter, Clemons got into his car as if to leave, and Tolbert threw a brick through the rear windshield of the car. Clemons got out of the car and fatally shot Tolbert. Shortly thereafter, Clemons surrendered himself to the sheriff's office. On March 2, 1993, Clemons was indicted by the grand jury of Neshoba County for the murder of Kevin Tolbert.

On June 3, 1993, the court held a hearing on a motion for a change of venue. Because Clemons was a black man accused of killing a white man, who was well known in the community, the defense alleged that Clemons could not receive a fair and impartial trial. Further, the defense contended that newspaper and television coverage of the killing fueled racial animosity, which would make selecting an unbiased jury impossible in Philadelphia, Mississippi. The court denied the motion for change of venue, and the trial commenced on July 19, 1993. During the jury selection phase, defense counsel made a *Batson* challenge on the basis that the prosecution had used its peremptory challenges to strike all African-American jurors. In response, the prosecution gave race-neutral reasons for each strike, and the court allowed the peremptory challenges to stand.

Subsequently, after presentation of the evidence and arguments by the defense and prosecution, the court issued jury instructions which included murder, manslaughter, and self-defense. The court then appointed the jury foreman to preside over the deliberations of the jury stating: "Mr. Hill, the court has a need for someone to serve as a spokesman from the jury to the court, and I am going to appoint you as the spokesman." Thereafter, the defense raised an objection, which the court overruled after stating the reason for having made the appointment. Subsequently, Clemons was convicted of murder and was sentenced to life imprisonment.

I.

WHETHER THE TRIAL JUDGE DENIED CLEMONS A FAIR AND IMPARTIAL TRIAL BY SELECTING THE JURY FOREMAN.

At the close of the arguments and jury instructions, the court appointed Mr. Hill as jury foreman. Clemons complains that the trial judge's appointment of the jury foreman foreclosed his right to a fair and impartial trial. Clemons specifically addresses the judge's use of impermissible criteria in appointing the jury foreman. In a dialogue between the judge and the defense counsel, the judge refers to Mr. Hill's race, gender, and education as determinative factors in making the appointment. The following is an excerpt of the dialogue:

MR. WALLS: Your Honor, when the court submitted the case to the jury, the court appointed a gentleman, I've forgotten his name, as a spokesperson or foreman of the jury, and we object to that, and, quite honestly, I will state to the court I don't know what the law is. It has been my understanding that the jurors, once they enter into deliberations, select their own foreperson, and the way the court did it, it could be inferred by some of the jurors that this gentleman has a higher responsibility and should be believed and listened to a little more than other jurors, since the court singled him out, and that is the basis of our objection, and we would move the court to --

THE COURT: Do you have any offer of prejudice to the defendant by reason of that, in the way of testimony?

MR. WALLS: Your Honor, we don't know, we can't offer any prejudice to that. The only thing, I guess -- nothing that we know of.

THE COURT: Do you move for a mistrial?

MR. WALLS: Your Honor, I think for the record, I have to.

THE COURT: All right. I am going to overrule your objection. This person, I named him as a spokesperson, told him I had a need for a person to serve as spokesman between the jury and the court. I recall a conversation this particular juror had with me on the first day

he was summonsed to court. He asked to be relieved from jury service, because he was one of the managers of the office at U.S. Motors, the largest industry here in Neshoba County. His information sheet indicates he is an educated man, and on this jury, there are very few on there that were educated. I think there's only one lady on there that had any college at all.

I indicated this person to serve as a spokesperson, because I felt he was the most capable person to bring in a verdict from the jury to the courtroom. He is a White male. There are six native Americans, or Indians, on the jury. Of the six, I think there are only two that has a high school education, and I believe Mrs. Gail Bates, or whatever her last name is, is the only other juror who has any college.

So, considering all of the jurors, I think he is the most qualified person to serve. Now, I am familiar with the rule you are talking about. It has been my practice, usually, to not appoint a person, but to let the jury select from among their number. In fact, I think I am the one that started this proceeding in *Johnson v. State*, requiring the jury to select someone as the spokesman, but in this particular case, it appeared to me the best thing to do was appoint this one person, because he seemed to be the only qualified person.

Certainly, this colloquy and its implications deserve this Court's full attention. Our case law addressing this subject is very sparse. In fact we have only two cases of record that raised the court's appointment of a trial jury foreman as an assignment of error. Neither of these cases are analogous to the present case because the defendants failed to timely object to the court's conduct. In *Ballenger v. State,* no objection was raised by the defense until after the jury had completed its deliberations on guilt, and was about to return to address the penalty phase of the case. *Ballenger v. State,* 667 So. 2d 1242, 1258 (Miss. 1995). In *Hunter v. State*, the defense made no objection and did not raise an objection during post-trial motions. *Hunter v. State,* No. 93-DP-01025-SCT, 1996 WL 352829, at *11(Miss. June 27, 1996). In both cases the defendants were procedurally barred from raising the argument on appeal. Nevertheless, the supreme court held prospectively that the jurors, not the court, should select the jury foreman. *Id.; Ballenger,* 667 So. 2d at 1258. "Who is to be the foreman is a decision which should be made by fellow jurors." *Hunter,* 1996 WL 352829, at *11(quoting *Ballenger*, 667 So. 2d at 1258). Both *Hunter* and *Ballenger* were decided subsequent to the present case; therefore the trial judge did not have the benefit of these decisions. Nevertheless it was error for the trial judge to have appointed Hill as jury foreman in this case.

Unlike the defendants in *Ballenger* and *Hunter*, Clemons did not remain silent. Although the objection was not simultaneous, it was raised within a sufficiently contemporaneous period of time to allow the court to correct its error. As such the underlying considerations for contemporaneous objections were met. Those considerations include avoiding costly new trials; allowing the offering party an opportunity to obviate the objection; and allowing the court the opportunity to rule on the objection. *Oates v. State*, 421 So. 2d 1025, 1030 (Miss. 1982). The record suggests that the following sequence of events occurred relative to the trial judge's appointment of the jury foreman:

> 1. The judge appointed a foreman and dismissed the jury to deliberate.

2. The jury immediately left the courtroom.

3. The judge and lawyers immediately left the courtroom.

4. The defendant immediately lodged an objection to the appointment of a jury foreperson.

There is no record of the time lapse between these events. However, it would not be a stretch of the mind to suggest that no more than five minutes passed from the appointment of the foreman to the point of bringing it to the court's attention. Within this time frame, no real jury deliberation had begun, and the court could have easily recalled the jury to correct its error. The contemporaneous objection requirement is not a static rule particularly where the objection is not to an evidentiary matter but a basic right to a fair and impartial trial. The record indicates that the victim was a white male, and that allegations of racial animosity led to the killing. When placed in the trial vacuum, the trial judge's actions and comments along with the events preceding the court's appointment raise a question about the overall fairness of the trial, and whether the net impact has impaired a fundamental right. We believe that it has.

As such we find that the trial judge both exceeded the intention of section 13-5-1 of the Mississippi Code and violated Clemons' rights ensured by Sections 14 and 26 of the Mississippi Constitution.

First, section 13-5-1 of the Mississippi Code establishes the relevant criteria that the presiding judge shall use to determine the competency of jurors. According to the statute:

> Every citizen not under the age of twenty-one years, who is either a qualified elector, or a resident freeholder of the county for more than one year, is able to read and write, and has not been convicted of an infamous crime, or the unlawful sale of intoxicating liquors within a period of five years and who is not a common gambler or habitual drunkard, is a competent juror.

Miss. Code Ann. § 13-5-1 (1972). While the statute mentions several necessary qualifications, it does not require jurors to be of a particular race or sex, nor does it require jurors to have a college education. In fact, the statute specifically states that jurors are competent if they have the ability to read and write. *Id.* Thus, the trial court's rationale for selecting Mr. Hill as jury foreman is contrary to the mandate of the statute. In fact, the court specifically seemed to call into question the competency of the six Native American jurors. If the court considered the impaneled jurors incompetent to return a verdict, then the court should have dismissed the panel.

The court, by it's own admission, selected the sole white male, who was in the courts' opinion the most educated and professional individual, to serve as the liaison between the court and the jury.

The court's designation of Mr. Hill as foreman placed the court's stamp of approval upon his actions or arguments during deliberations and impinged upon the customary independence of each individual juror. *Dorshkind v. Harry N. Koff Agency, Inc.*, 134 Cal. Rptr. 344, 347 (1976). Such judicial interference necessarily conveys the impression that the court had singled out one juror and placed its

imprimatur on his words and actions. *Id.*

Finally, the trial court abridged Clemons' constitutional right to a fair and impartial trial under the Mississippi Constitution. The constitution unquestionably guarantees the criminal defendant a fair and impartial trial without which the State cannot deprive the defendant of life or liberty. *See* Miss. Const. art. III, §§ 14, 26. This right to a fair and impartial jury is the hallmark of the Mississippi judicial system. *Mhoon v. State,* 464 So. 2d 77, 80 (Miss. 1985). While the constitution does not guarantee a trial without flaws, it does provide for a fair trial. *Fulgham v. State*, 386 So. 2d 1099, 1100 (Miss. 1980) (citations omitted). The trial court may not have intended to prejudice Clemons, but the nature of the appointment created an atmosphere ripe for prejudicial influence. From the outset, the case had significant racial overtones because of the victims alleged use of racial slurs and pre-trial publicity surrounding the killing of a white male by a black male. These facts alone signified the need to guard against any hint of partiality. However, the court used impermissible criteria such as race, employment, gender, and education to pronounce Mr. Hill as the "most qualified" person to preside over the deliberations. Clearly, the court intended to use Mr. Hill to lead the other "unqualified" jurors. This Court is concerned that those jurors attached some inflated importance or gave undue deference to the opinions of Mr. Hill. Such acquiescence is unacceptable. A jury must remain neutral and impartial in carrying out its responsibility of deciding the guilt or innocence of the defendant. *Mhoon,* 464 So. 2d at 81 (Miss. 1985).

While the jury was not present during the court's discussion with defense counsel, it is the court's appointment and the fact that the court anticipated a need for a juror with the "qualifications" held by Mr. Hill that raise a question of impartiality. *See Dorshkind*, 134 Cal. Rptr. at 347 (trial judge's selection of a jury foreman constitutes an inherent danger to the inviolateness of the jury system). The court must protect the criminal judicial system from even the appearance of impartiality. "If [the jury was] exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption." *Fulgham*, 386 So. 2d at 1101 (quoting *Green v. State*, 97 Miss. 834, 838 (1910)). Thus, this Court concludes that the lower court interfered with the jury's independence and created the appearance of impartiality that abridged Clemons' right to a fair and impartial trial. We reverse and remand for a new trial.

II.

> WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANT A *BATSON* CHALLENGE TO THE PROSECUTION'S PEREMPTORY STRIKES.

Clemons argues that the trial court erred by denying his *Batson* challenge to the prosecution's peremptory strikes against African-American veniremen. We do not address the merits of this assignment of error, having determined that the court's appointment of the jury foreman necessitates reversal and a new trial.

**THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. COSTS ARE ASSESSED AGAINST NESHOBA COUNTY.**


**FRAISER, C.J., BRIDGES, P.J., BARBER, COLEMAN AND PAYNE, JJ., JOIN CONCUR.**

**THOMAS, P.J., DISSENTS WITH SEPARATE OPINION JOINED BY DIAZ, MCMILLIN AND SOUTHWICK, JJ.**

# IN THE COURT OF APPEALS 12/3/96

## OF THE

## STATE OF MISSISSIPPI

### NO. 93-KA-00856 COA


**DANYEL L. CLEMONS**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


THOMAS, P.J., DISSENTING:


At the time the trial court appointed a jury foreperson, Clemons interposed no objection. It was not until the jury had retired with instructions, and counsel and the trial court had moved into the trial court's chambers that Clemons' counsel first raised the issue of the trial court appointing the foreperson. Clemons' failure to contemporaneously object at a time when the trial court could have corrected its error, if any, constitutes a waiver of the alleged error. If that were not enough, Clemons failed in his appeal to assign as error the trial court's appointing the jury foreperson until it was added in his rebuttal brief, which contained a frank admission that the issue was not raised in the original

brief. Clemons "double faulted" procedurally and should be barred from being heard at this point.

As to the merits, note that this case was decided on July 20, 1993. Prior to *Ballenger v. State*, 667 So. 2d 1242, 1258 (Miss. 1995), a death penalty case initially decided on September 21, 1995, and after the trial of the case sub judice, the law regarding selection of the jury foreperson was, at best, murky or, at worst, silent.

Former Rule 5.14 of the Uniform Criminal Rules of Circuit Court Practice, in effect at the time of this case provided in pertinent part: "The court may direct the jury to select one of its members to preside over the deliberations . . . ." Unif. Crim. R. Cir. Ct. Prac. 5.14. The identical language of this rule has been brought forward in Rule 3.10 of the Uniform Circuit and County Court Rules, effective May 1, 1995. *See* URCCC 3.10.

In *Ballenger*, the trial court appointed the foreperson of the jury without objection. Our supreme court held:

At the time the trial court appointed Ganann as jury foreman, Ballenger made no objection. The failure to make a contemporaneous objection waives the right to raise this issue on appeal.

In the future, trial judges are advised not to appoint jury foremen. Who is to be the foreman is a decision which should be made by fellow jurors.

*Ballenger*, 667 So. 2d at 1258-59.

Our rules use the term "may" instead of "shall," leaving, I suggest, a degree of discretion with the trial court as to who selects the foreperson of the jury. The *Ballenger* court advised that *in the future* trial judges should leave the selection of the foreperson to the jury. *Id*. In spite of a lack of objection, I would have thought that the *Ballenger* court would have noticed plain error and reversed the case if it thought the error was so grave, particularly in view of the fact that *Ballenger* was a death penalty case.

The colloquy between the trial court and Clemons' counsel in the case sub judice demonstrates three points. The law as to who selected the foreperson was not certain. Second, the less than judicious remarks by the trial court regarding some jurors were not made in the jurors' presence. Third, Clemons could not advance at trial or on appeal any meaningful argument as to prejudice, except to assume or infer some taint on the jury's deliberations.

Citation to section 13-5-1 of the Mississippi Code is misplaced. That section refers to the general competency of jurors and does not address the trial court's discretion in appointing a foreperson and the resulting impact on jury deliberations. Likewise, although I agree with the general language quoted by the majority in the cases of *Mhoon v. State*, 464 So. 2d 77 (Miss. 1985), *Fulgham v. State*, 386 So. 2d 1099 (Miss. 1980), and *Green v. State*, 97 Miss. 834 (1910), none of those cases dealt with or addressed the issue before us. The citation to *Dorshkind v. Harry N. Koff Agency, Inc*., 134 Cal. Rptr. 344 (1976) is helpful but not authoritative. Finally, although stated in terms of a constitutional right to a fair trial, the majority cites no Mississippi Supreme Court or United States Supreme Court authority that elevates the selection of a jury foreperson to a constitutional right.

We should hold Clemons procedurally barred from raising this issue and affirm. Without waiving the procedural bar, we should hold that the trial court acted within its discretion under the law which existed at the time of this trial and affirm. Alternatively, setting aside the time bar and even if we were to assume error on the trial court's part, we should still affirm since there has been no showing of prejudice.

**DIAZ, MCMILLIN AND SOUTHWICK, JJ., JOIN THIS OPINION.**