BARNES, J„
for the Court:
¶ 1. A DeSoto County Circuit Court jury convicted Benjamin Talbert for the murder of Brendan Talley. Talbert was sentenced to a mandatory term of life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). The Mississippi Office of Indigent Appeals represents Talbert on appeal. The attorney filed a brief pursuant to Lindsey v. State, 939 So.2d 743, 748 (¶ 18) (Miss.2005), stating that after diligently searching the history and record of Talbert’s case, he found no arguable issues for appeal to present to this Court in good faith. Following the procedure set forth in Lindsey, Talbert filed a pro se brief on his own behalf. Citing several assignments of error, he appeals his conviction and sentence. Finding no error, we affirm the judgment.
FACTS AND PROCEDURAL HISTORY
¶ 2. Talbert dated Leanna Russell for approximately a year, until they parted company in June 2009 due to Talbert’s substance-abuse problem. Talbert kept in contact with Russell, attempting to reconcile, and she remained friendly with Tal-bert, not wanting to hurt his feelings.
¶ 3. Two months after the breakup, Tal-bert went to Russell’s apartment uninvited. Russell was there with her new boyfriend, Talley, and another friend, Corey Kessler. Talbert asked Russell if she was dating Talley. To spare Talbert’s feelings, Russell claimed Talley was just a friend. Talbert was unconvinced and called Kes-sler later that evening, asking if Talley was Russell’s boyfriend. Kessler denied that he was.
¶ 4. The following day, on August 8, 2009, an upset Talbert called Russell and stated he was going to commit suicide by shooting himself. She urged him not to harm himself. He called her again later that evening, wanting to see her, but she refused. Although Russell lied and said that she was not home, Talbert showed up armed at Russell’s apartment shortly thereafter. Talley was in the apartment with Russell. After Talbert repeatedly *69 beat on the door, Russell opened it. Tal-bert pushed his way inside, initially holding the pistol to his own head. Instead of shooting himself, however, Talbert shot Talley three times, killing him, before fleeing the scene.
¶ 5. In the hours after the shooting, the police talked with Talbert several times on the phone, and he eventually surrendered to police at his mother’s residence. Searching Talbert, police recovered a .22-caliber revolver and a crack pipe from his pocket. The handgun had four spent rounds and one unspent round. After being advised of his rights, Talbert confessed to shooting Talley. He also stated that he had smoked crack before and after the shooting.
¶ 6. Following a jury trial, Talbert was convicted of murder and sentenced to life imprisonment in the custody of the MDOC, which sentence was to run consecutively to any another sentences. Talbert filed motions for a judgment notwithstanding the verdict and a new trial, which were denied.
¶ 7. On appeal, Talbert raises numerous assignments of error. For clarity, we have consolidated some of the issues in our discussion. After reviewing the issues cited by Talbert, we find no error exists and affirm the conviction and sentence.
ANALYSIS
I. Whether the circuit court erred in overruling Talbert’s motion to suppress.
¶ 8. Talbert filed a motion to suppress his taped statement given to police, claiming that he was under the influence of intoxicants at the time and, therefore, could not knowingly and voluntarily waive his rights. The circuit court overruled the motion on July 22, 2011, and the recorded statement was submitted into evidence. On appeal, Talbert reasserts his argument, noting the fact that he told police officers that he had been smoking crack, and a crack pipe was in his pocket when he was apprehended.
¶ 9. Whether a defendant intelligently, knowingly, and voluntarily waives his rights “is a factual question to be determined by a [circuit] court from the totality of the circumstances.” Taylor v. State, 94 So.3d 298, 307 (¶ 21) (Miss.Ct.App.2011) (citing Martin v. State, 854 So.2d 1004, 1007 (¶ 4) (Miss.2003)). “We will only reverse a circuit court’s ‘determination of voluntariness if convinced that such a finding is manifestly wrong and/or against the overwhelming weight of the evidence.’ ” Id.
¶ 10. The police investigation report shows that Talbert admitted that he had smoked crack prior to the shooting. Officer Todd Samples testified that when he spoke to Talbert approximately an hour after the shooting, Talbert confessed that he had been smoking crack. However, the investigation report also notes that Talbert was cooperative with law enforcement and acknowledged that he understood his rights when giving his confession, which occurred approximately four hours after the shooting. At the hearing on the motion to suppress Talbert’s statement, Officer Samples stated there was nothing to indicate that Talbert did not understand or comprehend what he was doing. Detective Danielle Beith also interviewed Talbert after the shooting, and she testified at the hearing that Talbert appeared to understand what he was saying when he gave his statement. She stated: “There didn’t appear to be any effects. He appeared to be coherent and understood what we were doing.” Later, at trial, Officer Samples said that he would not interview a suspect who appeared to be under the influence and reiterated that Talbert did not appear *70 to be under the influence of any drugs. Furthermore, the evidence of the crack pipe found in his pocket was not introduced at the motion hearing.
¶ 11. Based on the evidence presented, we find that there is sufficient evidence to support the circuit judge’s finding that Talbert’s waiver of his rights and his recorded statement were voluntarily and knowingly made.
II. Whether the questioned credibility of Officer Samples’s testimony requires a new trial.
¶ 12. Talbert claims Officer Samples gave perjured testimony when he stated at trial that he conducted a pat down of Talbert during the arrest and retrieved the murder weapon. Talbert insists that discovery documents show another officer performed the pat down and seized the gun. Talbert is referring to the investigative report completed by Officer Samples that stated: “Deputy Brett Grossman recovered a small [J22 caliber derringer (revolver) in Talbert’s right pocket[.]”
¶ 13. Talbert is correct that Officer Samples testified: “I patted him down for safety purposes and recovered a gun, a small .22[d]erringer.” The Mississippi Supreme Court has stated: “To be sure, where it may be established that a conviction has been obtained through the use of false evidence or perjured testimony, the accused’s rights secured by the [D]ue [Pjrocess [Cjlause of the Fourteenth Amendment of the Constitution of the United States are implicated.” Pearson v. State, 428 So.2d 1361, 1363 (Miss.1983) (citing Mooney v. Holohan, 294 U.S. 103, 112-13, 55 S.Ct. 340, 79 L.Ed. 791 (1935)).
¶ 14. However, Talbert has not asserted that Officer Samples was not present when the weapon was recovered. The identification of which officer retrieved the murder weapon is immaterial to the facts of this case so long as Officer Samples was present when Talbert was searched and the gun retrieved from his person. There is nothing to show that the misstatement in Officer Samples’s testimony was material to obtaining Talbert’s murder conviction. Therefore, we find no merit to Tal-bert’s claim.
III. Whether the circuit court violated Talbert’s rights under the Sixth Amendment of the United States Constitution.
¶ 15. Talbert contends that the circuit court erred by not allowing Dr. Criss Lott, a forensic psychologist, to testify on the defendant’s behalf. Dr. Lott provided a report to the circuit court as to Talbert’s competence to stand trial. Lott’s testimony from a previous trial, which resulted in a hung jury, was proffered to the court. In denying the admission of Dr. Lott’s testimony, the circuit judge concluded:
Basically, the testimony of Dr. Lott would show that this young man upon examination had an addiction to certain drugs, and whether or not expressed exactly[,] more or less a defense of diminished capacity, which, of course, is not legally recognized in the State of Mississippi. Mississippi recognizes the McNaughton [sic] rule,[1] which provides that the only defense of that sort that’s available to a person is the McNaughton [sic] test, which means a person cannot distinguish between right and wrong.
[[Image here]]
*71 Certainly insanity is not being claimed in this case; therefore, the only thing to claim, according to Dr. Lott, is the diminished capacity.
[[Image here]]
And I’m ruling that Dr. Lott’s testimony is not relative to the inquiry here before us today.
¶ 16. Talbert claims Dr. Lott’s testimony regarding his long history of drug use and state of mind was relevant to negate Talbert’s intent to kill and preserve a defense of manslaughter. We, find that the circuit court correctly excluded this testimony as diminished capacity is not a defense in Mississippi. See Brown v. State, 981 So.2d 1007, 1015 (¶ 24) (Miss.Ct.App.2007) (citations omitted) (holding “that ‘diminished capacity’ is not a recognized defense to a criminal charge in Mississippi”). Furthermore, “[i]t is well established that voluntary intoxication is not a defense in Mississippi.” Adams v. State, 62 So.3d 432, 441 (¶ 31) (Miss.Ct.App.2011) (citing Smith v. State, 445 So.2d 227, 230-31 (Miss.1984)). This issue is without merit.
IV. Whether the prosecution’s alleged false statement violated Talbert’s due process under the law.
¶ ,17. Talbert argues that the prosecutor made false statements to members of the venire. Specifically, he draws attention to the prosecution’s statement during voir dire:
One quick thing is you will not be involved with punishment in this ease. Everybody understand that? You, as jurors, will not be involved with punishment should the evidence prove beyond a reasonable doubt Mr. Talbert’s guilty. Punishment will strictly be up to Judge Chatham. Everybody understand -that?
Talbert claims that the jury’s role in deciding whether to convict him of murder or convict him for manslaughter involved punishment. However, the prosecution’s statement was not false; the jury was not involved in determining the sentencing of the defendant. Consequently, there is no merit to this argument.
V. Whether the State committed prosecutorial misconduct by using the terms “murder” and “deliberately.”
¶ 18. The circuit court sustained Talbert’s motion in limine as to the use of the term “murder” during the trial. Tal-bert now claims he was unjustly prejudiced due to the State’s liberal use of the term “deliberately” and its use of the term “murder” in its closing argument. ■
¶ 19. During opening statements, the prosecutor said: “[Talbert] deliberately armed himself. He deliberately went in there, and he deliberately fired the gun that contained the bullets that killed [Talley.]” Defense counsel made no objection to the use of the term “deliberately.” The State also used the' term “deliberately” several times in its questioning of Officer Samples. After an objection by defense that the term was leading, the circuit court sustained the objection and asked the State to rephrase its questioning. The State also concluded its closing argument by saying: “But that’s not an excuse for murder.” No objection was made by the defense; thus, the issue is waived on appeal. See Hawkins v. State, 90 So.3d 116, 121 (¶ 20) (Miss.Ct.App.2012) (Failure to object contemporaneously to argument at trial “waives the issue on appeal[.]”). We also note that Talbert’s defense counsel also used the term “murder” in his opening statement.
¶ 20. Furthermore, we find no evidence of prosecutorial misconduct. The use of the term “deliberately” was not banned by the court. Further, while the prosecution *72 used the term “murder” in its closing argument, Talbert’s motion in limine had asked that the .State be prevented from using the term “murder” during its examination of witnesses. In sustaining the motion, the circuit judge stated: “I would ask that you instruct your witnesses to refer to the incident as a homicide investigation or as a shooting[.]”
¶ 21. The supreme court has held:
Attorneys are allowed a wide latitude in arguing their cases to the jury. However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.
Anderson v. State, 62 So.3d 927, 939-40 (¶ 39) (Miss.2011) (quoting Tate v. State, 20 So.3d 623, 629 (¶ 14) (Miss.2009)). In the present case, the context of the term “murder” was merely used by the State to point out that the evidence supported a finding of deliberate-design murder. “The purpose of a closing argument is to fairly sum up the evidence.” Goff v. State, 14 So.3d 625, 654 (¶ 115) (Miss.2009) (quoting Rogers v. State, 796 So.2d 1022, 1027 (¶ 15) (Miss.2001)). As such, “the prosecutor, as any other counsel, is free to recall and comment on testimony offered in evidence and to draw inferences.” Id. at (¶ 116) (quoting Bell v. State, 725 So.2d 836, 851 (¶ 40) (Miss.1998)). Therefore, we find that the State’s use of the term “murder” during its closing argument was permissible.
VI. Whether Talbert was denied the right to a fair and impartial jury.
¶ 22. Talbert claims that his right to a fair and impartial jury was violated, as there were too many members of the veni-re who had ties either to law enforcement, to the district attorney’s office, or to victims of crimes. Talbert cites Mhoon v. State, 464 So.2d 77 (Miss.1985), to support his claim. In Mhoon, six members of the jury were either law enforcement officers or related to a law enforcement officer. Id. at 80. Moreover, the jury foreman was a uniformed police officer. Id. In remanding the case for a new trial, the Mississippi Supreme Court stated:
This Court does not hold that a person engaged in law enforcement, or related by blood or marriage to one engaged in law enforcement, should be per se excluded from jury service. However, in a unique factual situation such as this unusual case, the opportunity for undue influence over the opinions of other jurors was too great a risk. A uniformed policeman served as foreman of the jury. This Court holds that under this novel situation the coercive inference on the jury precludes this Court from saying that this appellant was afforded his constitutional right of a trial by an impartial jury secured by Art[icle] 3, [Section] 26 of our Constitution. Additionally, due process of law guaranteed by our Constitution under Art[icle] 3, [Section] 14 requires a retrial.
464 So.2d at 82.
¶ 23. Mhoon, however, is distinguishable from the present case as no venire member listed by Talbert was actually made a member of the jury. Furthermore, Talbert only had to use three of his peremptory strikes to eliminate members of the venire who had ties to law enforcement, and all but two of the listed venire *73 members attested that they could be fair and impartial.
In general, a voir dire is presumed sufficient to ensure a fair and impartial jury. To overcome this presumption, a party must present evidence indicating that the jury was not fair and impartial and show that prejudice resulted from the circuit court’s handling of the voir dire. A [circuit] court’s finding that an impartial jury was impaneled will not be reversed unless the court abused its discretion. This Court will treat with deference a venire person’s assertions of impartiality.
Ross v. State, 954 So.2d 968, 988 (¶ 81) (Miss.2007) (citations omitted). We find that Talbert has not provided any evidence that the jury was not fair or impartial or that any prejudice occurred as a result of voir dire. Accordingly, we find no error.
VII. Whether the State’s use of peremptory strikes demonstrated a gender bias.
¶24. Talbert claims that the jury composition of eleven females and only one male violated his rights under the Equal Protection Clause of the Fourteenth Amendment. Peremptory strikes may not be used for the purpose of striking jurors based solely on their race or gender. See J.E.B. v. Alabama, 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To establish a prima facie case of discrimination, the defendant must “demonstrate] that the percentage of the State’s peremptory strikes exercised on members of the protected class was significantly higher than the percentage of members of the protected class in the venire.” States v. State, 88 So.3d 749, 755 (¶ 22) (Miss.2012) (citing Pitchford v. State, 45 So.3d 216, 225 (¶ 15) (Miss.2010)). “This Court will accord a [circuit] judge’s Batson determinations great deference, as such determinations are based largely on credibility.” Perry v. State, 949 So.2d 764, 766 (¶ 5) (Miss.Ct.App.2006) (citing Tyler v. State, 911 So.2d 550, 553 (¶ 10) (Miss.Ct.App.2005)).
¶ 25. As the State notes, it was Tal-bert’s defense counsel who used the majority of his peremptory strikes again males. In fact, during the jury selection process, the prosecution accused defense counsel of striking male jurors solely based on then-gender. At that moment in the proceedings, the jury consisted of one male juror out of ten. The defense presented gender-neutral reasons for striking the prospective jurors, stating that one male was related to law enforcement, and his cousin was the victim of a crime. Defense counsel also reasoned that two other male jurors looked angry, and one of the male jurors was not “attentive.” The defense then charged the State with striking female jurors based on their gender. In response, the State observed that it had already selected nine women to serve on the jury. The circuit judge found that “[n]one of the peremptory challenges appear to be on the basis of genderf,]” and the selection of the jury continued.
II26. Giving deference to the circuit judge’s findings, we find there was a gender-neutral basis for the peremptory strikes. Accordingly, we find no error.
VIII. Whether the circuit court erred in admitting photographs of the deceased.
¶ 27. Talbert filed a motion in limine to exclude all photographs of the decedent. The circuit court, however, allowed some photographs of the deceased to be admitted into evidence, finding that they were relevant to show intent. In addition, although defense counsel claimed that it was more prejudicial than proba *74 tive, the circuit court allowed the State to introduce one photograph of the victim while he was alive. Talbert maintains that it was error to admit the photographs.
¶ 28. “As a general rule, the admission of photographs is within the discretion of the [circuit] court[.]” Barfield v. State, 22 So.3d 1175, 1181 (¶ 14) (Miss.2009). However, the supreme court has commented:
[PJhotographs of the victim should not ordinarily be admitted into evidence where the killing is not contradicted or denied, and the corpus delicti and the identity of the deceased have been established. Photographs of bodies may nevertheless be admitted into evidence in criminal cases where they have probative value and where they are not so gruesome or used in such a way as to be overly prejudicial or inflammatory.
Sudduth v. State, 562 So.2d 67, 70 (Miss.1990) (citations omitted). Furthermore, “photographs have evidentiary value when they ‘(1) aid in describing the circumstances of the killing; (2) describe the location of the body and cause of death; and (3) supplement or clarify witness testimony.’ ” Barfield, 22 So.3d at 1181 (¶ 15) (quoting McIntosh v. State, 917 So.2d 78, 83 (¶ 13) (Miss.2005)).
¶ 29. In this case, the State presented the photographs of the deceased to describe the circumstances of the killing and to show that Talbert chased down Talley in the apartment and shot him at close range. The State presented the other photograph of Talley merely to show the jury “what [Talley] looked like.”
¶ 30. Upon review, we do not find that the photographs were cumulative, or that their potential for prejudice outweighed their probative value. Therefore, we hold that the circuit judge did not abuse his discretion by admitting the photographs into evidence.
IX. Whether the circuit court violated Talbert’s rights under the Confrontation Clause.
¶ 31. Talbert claims that the circuit court should have required the State to present testimony by the forensic scientist who conducted the ballistic testing on the murder weapon. To support his claim, Talbert cites Bullcoming v. New Mexico, — U.S. -, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). In Bullcoming, the United States Supreme Court held that the Confrontation Clause did not permit the prosecution “to introduce a forensic laboratory report” with “surrogate testimony” of an analyst that “had neither participated in nor observed the test on [Donald] Bullcom-ing’s blood sample.” Id. at 2709-10. We find Bullcoming not relevant to the present case, as the State did not present as evidence any forensic testing of the murder weapon. There was no dispute at trial that Talbert fired the gun.
¶ 32. We also reject Talbert’s claim that it was error to allow Officer Samples to give expert testimony regarding the murder weapon. Defense counsel failed to object to this testimony at trial; thus, this argument is barred on appeal. See Davis v. State, 992 So.2d 1190, 1193 (¶ 9) (Miss.Ct.App.2008) (“A defendant is proeedurally barred from asserting an issue on appeal if he fails to object to the statements during trial.” (citing Moore v. State, 938 So.2d 1254, 1265 (¶ 32) (Miss.2006))). Moreover, the record reflects that Officer Samples merely testified as to how the gun worked and how to load the gun. The only purpose of this testimony was to show that the gun had to be manually cocked before it would fire again. We find no merit to this issue.
X. Whether defense counsel rendered ineffective assistance of counsel.
¶ 33. Talbert claims that his defense attorney failed to share discovery *75 information with him. At the State correctly notes, ineffective-assistance-of-counsel claims are rarely heard “on direct appeal unless ‘(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the [circuit] judge.’ ” Johnson v. State, 50 So.3d 335, 339 (¶ 19) (Miss.Ct.App.2010) (quoting Graves v. State, 914 So.2d 788, 798 (¶ 35) (Miss.Ct.App.2005)). Our review of this type of claim “is confined strictly to the record.” McKnight v. State, 94 So.3d 1144, 1152 (¶ 39) (Miss.Ct.App.2011) (citing Colenburg v. State, 735 So.2d 1099, 1102 (¶ 6) (Miss.Ct.App.1999)).
¶ 34. We find that the record is inadequate to show ineffective assistance of counsel of constitutional dimensions. Therefore, this claim is dismissed without prejudice in order to preserve Talbert’s right to raise this issue in post-conviction proceedings.
XI. Whether cumulative error warrants relief from the judgment.
¶ 35. Lastly, Talbert contends that the circuit court’s cumulative errors denied him due process and warrant a reversal of his conviction. “However, a ‘reversal based upon cumulative error requires a finding or findings of error.’” Johnson v. State, 75 So.3d 63, 69 (¶ 20) (Miss.CtApp.2011) (quoting Madden v. State, 42 So.3d 566, 574 (¶ 31) (Miss.Ct.App.2010)). As we have found no merit to Talbert’s individual claims, we conclude that no cumulative error exists in this instance.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCE TO RUN CONSECUTIVELY TO ANY SENTENCE CURRENTLY BEING SERVED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. The circuit court is referring to M'Naghten's Case, 10 Clark & F. 200, 210, 8 Eng. Rep. 718, 111 (1843).