GEE v. STATE.

(Division A. Dec. 12, 1938. Suggestion of Error Overruled Jan. 23, 1939.)

[185 So. 203. No. 33485.]

B. H. Loving and J. E. Caradine, both of West Point, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**McGowen, J.,** delivered the opinion of the court.

Appellant Gee was convicted of manslaughter and sentenced to serve a term of seven years in the penitentiary. He was tried on an indictment for murder in the killing of E. D. Shultz. The main argument for reversal is that the evidence was insufficient to sustain the conviction.

The homicide occurred in the suburbs of West Point near a ditch which was a part of the highway abutting the property occupied by the appellant and others. The appellant had leased from the owner a lot upon which was situated three buildings, which were occupied as dwellings, one of which was a store building occupied by Mrs. Stevens, another dwelling being occupied by Martin, and the appellant lived in a small house situated to the rear of these buildings. He was a bachelor and lived alone.

Shultz's body was found the following morning in the ditch, with gunshot wounds in his chest and on other parts of his body, (about 100 shots in the chest) and these shots entered vital parts of the body, from which it was shown death ensued, probably from a hemorrhage of the lungs. The highway runs from east to west.

The State's evidence was substantially as follows: That on the evening of the homicide, the appellant was in a barbecue stand (Hicks) where beer was sold, drinking beer; that he came into the place with a shotgun and

said, "Well, I am going to kill a man." Several witnesses so testified. A young lad (Homer Hicks, Jr.) remonstrated with him and reminded him that he would get in trouble, and he replied, "There will be no trouble about that because I will kill him in self-defense." That he later in the night appeared in the same store and announced generally that he had shot him a man, he knew he had shot him, and on this statement being doubted or questioned, he said, "Yes, I hit him right here and he said 'ugh-ugh.' " Appellant had borrowed a gun that afternoon for the announced purpose of hunting squirrels, and he had three weeks before borrowed a gun for the same purpose. It was shown by the sheriff of the county, where the appellant had pointed out, he stood when he fired the shots, when he said he knew the shots had hit the deceased because he said "ugh-ugh." There was no evidence of any weapon being found about the place where the body of the deceased was found. There was some evidence tending to show that Shultz had declared that he had a license to marry Mrs. Stevens, but was making some investigation as to her character. The body was found about forty-five feet from where Gee was standing when he fired the shots at Shultz. There was evidence tending to show that they were anywhere from forty-five to seventy feet apart at the time of the shooting.

Appellant's version of the homicide is in substance as follows: At about sun-down, he was cutting wood; (he had prepared a roast to cook) and heard a big racket in the Stevens house, that Mrs. Stevens ran into the yard, Shultz following her, making some outcry, Shultz told Mrs. Stevens "Call all your God-damned friends over here, God-damn 'em"; that appellant started to the place, told the deceased to get off the place and not come back, to which Shultz replied, "I will get you." He saw Mrs. Stevens going up the highway and Shultz ran to catch her as though to prevent her going for "the law," which she had threatened to do. He testified that later during

the night, between eight and nine o'clock, while in his home, the deceased came to his door and put his hand up against the facing and had some sort of a blade in his hand. Whereupon, the appellant said he thought he told him to stay away from the place, to which the deceased responded, "I am going to cut your God-damn throat and beat your damn brains out;" that he got the gun and "backed Shultz" away from the house, and when he apparently halted about the fence, which was twelve feet from the house occupied by appellant, he said to the deceased, "You are not going to get off here, are you?" Shultz proceeded to the sidewalk, appellant stopped at his gate, Shultz turned back after reaching the sidewalk advancing toward appellant and said, "I will cut your throat and knock your brains out," with oaths, and that he did not believe appellant "had the nerve to use the gun." Thereupon, appellant shot at the deceased, but testified that he did not know whether he hit him or not. He denied that he had said that he shot a man and testified that he did not know until he saw the body of Shultz in the ditch on the following morning. He denied all the threats which had been offered in evidence by the State.

(1) It is the contention of appellant that the only account of the facts of the homicide is that given by the accused, and that there were no other eye-witnesses, that his account thereof is uncontradicted and reasonable and must be accepted as true, unless substantially contradicted in material particulars by credible witness or witnesses for the State, or by the physical fact or facts of common knowledge; relying upon Houston v. State, 117 Miss. 311, 78 So. 182; Patty v. State, 126 Miss. 94, 88 So. 498; Wesley v. State, 153 Miss. 357, 120 So. 918; Walters v. State, 153 Miss. 709, 122 So. 189; Gray v. State, 158 Miss. 266, 130 So. 150; Weathersby v. State, 165 Miss. 207, 147 So. 481; Kelly v. State, Miss., 147 So. 487, and Strahan v. State, 143 Miss. 519, 108 So. 502.

The rule above quoted, on which the appellant relies, has been often applied by this court in proper cases. It will be observed that the State's case rested upon the fact that the deceased had been killed with a deadly weapon, that he admitted the homicide and that just within an hour or two the appellant had made threats to kill a man, and knew in advance that he would kill the victim in self-defense. In the case at bar, there was no other eye-witness than the accused. However, his statement is that the deceased appeared in his door and retreated, uttering dire threats against the accused. He does not testify to any demonstration made by the deceased there, and he does not testify to any demonstration by him save that after going about seventy feet, Shultz turned and probably was advancing toward appellant, whereupon he fired the fatal shots and deceased was at least forty-five feet from the accused. We have not before stated that Gee testified that he was partially paralyzed on one side, but that he could get about and go squirrel hunting. On the appellant's own statement, coupled with the threats detailed, it was a question for the jury as to whether or not at the time the shot was fired, the deceased had so far advanced upon him as to justify him in taking the life of the deceased. It was for the jury to say whether or not in that situation at that time he had reasonable grounds as a reasonable man to honestly believe that he was in danger of loss of his life or great bodily harm at the hands of Shultz.

The intervening distance between the parties to this homicide was a material issue on this question, in applying the law of self-defense. In the case of Brown v. State, 176 Miss. 448, 169 So. 837, this Court said: "The eye-witnesses introduced on behalf of the state testified that, at the instant the fatal shot was fired, the deceased was approximately 20 feet away from the appellant, and it therefore became a question for the determination of the jury whether the issue of self-defense should be solved in favor of the accused." Brown's de-

fense there was that the deceased was advancing upon him with a knife, threatening to kill him.

In the case at bar, by all the evidence, including that of the accused, it was a question for the jury as to whether, although partially paralyzed, the accused was justified in slaying the deceased when the deceased was approximately anywhere from forty-five to seventy feet from the appellant. Under this evidence, the jury was warranted in finding that the appellant shot the deceased at a time when the appellant did not have a right to believe honestly that his life was in real or apparent danger, or that he was in real or apparent danger of great bodily harm from the deceased. Deceased had a knife, appellant a shotgun. The evidence warranted a conviction of murder.

(2) It is insisted that the court erred in permitting the State, over the general objection of the appellant, to prove that Shultz had declared his affection for Mrs. Stevens and that he had a license to marry her. If it be true that this evidence was incompetent, we are inclined to the view that under the circumstances of this case it was competent; still, we can find no substantial reason for reversing the case on this account.

(3) We find no reversible error in the instructions. The State obtained what is commonly called the "sinker instruction," calling on each member of the jury to stand by his convictions on the evidence, wherein the word "desire" is used as applicable to a particular juror which we do not think is of any consequence, and did not permit any single juror to bring in or stand for any other verdict than one which he was authorized to adopt by the law and the evidence in the case. We do not think it was error for the State to procure this instruction, though it may be doubted whether or not the court ought to grant such instruction on behalf of the State in any case. The use of the word "desire" did not leave a single juror's verdict to his caprice.

(4) The court refused the following instruction requested by the defendant: "The court charges the jury for the defendant that under the law a man's home is his castle, and that he is entitled to use and enjoy it, together with his premises appurtenant thereto free from the instrusion of any one that he has ordered to stay away from such home and premises." The court had granted other instructions which fully announced this trespass idea, and there was no error in refusing this instruction. It tended only to emphasize, and undertook to convey to the jury some right vested in the appellant to take the life of the deceased merely for a trespass. He did not kill the deceased at his home. He killed him at or as near as possible to the home of Mrs. Stevens. We doubt if this version should have been submitted to the jury in any event, but here the appellant can not complain because he got the full benefit of that principle in another instruction. The court properly declined to order a view of the scene of the homicide. In fact, there was no justification therefor in this case.

We find no reversible error in this case.

Affirmed.