859 So.2d 399 (2003)
Reno O'Neal BERRY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00957-COA.
Court of Appeals of Mississippi.
October 7, 2003.
*402 Stephen P. Livingston, New Albany, attorney for appellant.
Office of the Attorney General by: Billy L. Gore, attorney for appellee.
Before KING, P.J., BRIDGES and LEE, JJ.
BRIDGES, J., for the Court.
¶ 1. Reno O'Neal Berry was indicted on December 12, 2001, by the grand jury of Union County, Mississippi, and charged with four counts of selling a controlled substance, crack cocaine. However, Berry only went to trial on Count II. Following a jury trial, Berry was convicted of the sale of cocaine charged in Count II in violation of Mississippi Code Annotated section 41-29-139. He was then sentenced to twenty years in the custody of the Mississippi Department of Corrections with eight years suspended and twelve years to serve. It is that conviction that Berry now appeals.

STATEMENT OF THE ISSUES
I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT BERRY'S MOTION FOR A DIRECTED VERDICT AND/OR J.N.O.V.
II. WHETHER THE TRIAL COURT ERRED IN DENYING JURY INSTRUCTIONS D-4, D-9, AND D-10.
III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE JURY INSTRUCTION D-13.
IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A NEW TRIAL BASED ON PROSECUTORIAL MISCONDUCT.
V. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW DEFENSE COUNSEL TO CROSS-EXAMINE A CONFIDENTIAL INFORMANT'S PRIOR CONVICTION.
VI. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE'S WITNESS TO NARRATE A VIDEO.

FACTS
¶ 2. Reno Berry, a resident of Saltillo, Mississippi, sold 3.9 grams of cocaine to Reginald Williams, a confidential informant and the State's only eyewitness.
¶ 3. Reginald Williams testified that he purchased cocaine from Berry in the bathroom of Pinkie Pulliam's house on Sunset Road in Union County. Berry personally handed Williams the cocaine and Williams, in turn, handed Berry $300.
¶ 4. Tommy Smithey, a narcotics investigator with the New Albany Union County Drug Task Force, testified that on March 2, 2001, Williams, a confidential informant, made a drug buy at the home of Pulliam from a man later identified as Berry. Prior to the drug purchase, Williams and his vehicle were searched for drugs. Finding *403 none, Williams was then equipped with $300, a body transmitter and a video recording device, which ultimately recorded the transaction on videotape.
¶ 5. J.C. Smiley, a forensic drug analyst, testified that the substance sold to Williams constituted 3.93 grams of cocaine.
¶ 6. After the State finished its case-in-chief, Berry made a motion for a directed verdict which was overruled by the trial judge. Berry neither testified nor produced any witnesses to testify in his defense. The trial court also denied a peremptory instruction. Berry was later found guilty and sentenced by the court. Berry filed a motion for a JNOV which was denied by the trial court on June 18, 2002.

ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT BERRY'S MOTION FOR A DIRECTED VERDICT AND/OR J.N.O.V.
¶ 7. Our standard of review regarding motions for a directed verdict and also a JNOV is:
Sufficiency questions are raised in motions for directed verdict and also in JNOV motions. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Where a defendant moves for a JNOV or a directed verdict, the trial court considers all of the credible evidence consistent with the defendant's guilt, giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from this evidence. Id. This Court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fair-minded jurors could not find the accused guilty. Wetz v. State, 503 So.2d 803, 808 (Miss.1987.)
Holmes v. State, 798 So.2d 533, 538(¶ 18) (Miss.2001).
¶ 8. Motions for directed verdict and motions for JNOV are both for the purpose of challenging the legal sufficiency of the evidence. Noe v. State, 616 So.2d 298, 302 (Miss.1993); McClain, 625 So.2d at 778. See also Strong v. State, 600 So.2d 199, 201 (Miss.1992).
¶ 9. Our standard of review regarding the legal sufficiency of the evidence is as follows:
[W]e must, with respect to each element of the offense, consider all of the evidencenot just the evidence which supports the case for the prosecutionin the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty.
Wetz, 503 So.2d at 808.
¶ 10. According to the above standard of review, this Court looks at the evidence in the light most favorable to the verdict. This was certainly not a difficult task. All of the evidence points to the fact that Berry committed the crime of selling cocaine. There is even a video showing Berry and his illegal actions. There is no merit to this issue.
II. WHETHER THE TRIAL COURT ERRED IN DENYING JURY INSTRUCTIONS D-4, D-9, AND D-10.
¶ 11. Berry asserts that it was reversible error by the trial court not to grant *404 jury instructions number D-4, D-9, and D-10 that concerned reasonable doubt or explained reasonable doubt.
¶ 12. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Johnson v. State, 823 So.2d 582, 584(¶ 4) (Miss. Ct.App.2002).
Jury Instruction D-4
¶ 13. The trial court refused to grant jury instruction D-4, which provided:
The testimony of a law enforcement officer should be considered by you just as any other evidence in the case. In evaluating his or her credibility you should use the same guidelines which you apply to the testimony of any witness. In no event should you give either greater or lesser credence o[sic] the testimony of any witness merely because he or she is a law enforcement officer.
¶ 14. As stated in Hansen v. State, "[o]ur criminal procedure has long perceived dangers in comments upon the evidence, and in that regard we have for years had a statute," Mississippi Code Annotated section 99-17-35, which reads in pertinent part:
The judge in any criminal cause, shall not sum up or comment on the testimony or charge the jury as to the weight of evidence....
Hansen v. State, 592 So.2d 114, 141 (Miss. 1991) (see also Washington v. State, 341 So.2d 663, 664 (Miss.1977)).
¶ 15. This instruction, which commented on the weight of the evidence, was properly refused by the trial judge.
Jury Instruction D-9
¶ 16. The trial court also refused to grant instruction D-9, which provided:
The court instructs the jury that you are bound, in deliberating upon this case, to give the Defendant the benefit of any reasonable doubt of the Defendant's guilt that arises out of the evidence or want of evidence in his case. There is always a reasonable doubt of the Defendant's guilt when the evidence simply makes it probable that the Defendant is guilty. Mere probability of guilt will never warrant you to convict the Defendant. It is only when on the whole evidence you are able to say on you oaths [sic], beyond a reasonable doubt, that the Defendant is guilty, that the law will permit you to find him guilty. You might be able to say that you believe him to be guilty, and yet, if you are not able to say on your oaths, beyond a reasonable doubt, that he is guilty, it is your sworn duty to find the Defendant "not guilty."
¶ 17. There were numerous instructions including D-2, D-5, D-7 and court instruction No. 2 that were given to the jury regarding reasonable doubt. The Mississippi Supreme Court has stated that "reasonable doubt defines itself; it therefore needs no definition by the court." Barnes v. State, 532 So.2d 1231, 1235 (Miss.1988) (citing Boutwell v. State, 165 Miss. 16, 143 So. 479, 483 (1932)); see also Simpson v. State, 497 So.2d 424, 430 (Miss.1986); Pittman v. State, 350 So.2d 67, 71 (Miss.1977); Isaacks v. State, 337 So.2d 928, 930 (Miss. 1976). It is apparent to this Court that jury instruction D-9 was superfluous. The jury received a plethora of instructions concerning reasonable doubt. The jury had been fully informed that before it could return a verdict of guilty it had to believe beyond a reasonable doubt that Berry was guilty.
*405 Jury Instruction D-10
¶ 18. The trial court refused to grant instruction D-10, which provided:
The court instructs the jury that a reasonable doubt may arise from the whole of the evidence, the conflict of the evidence, the lack of evidence, the insufficiency of the evidence, but however it arises, if it arises, it is your sworn duty to find the Defendant "not guilty."
¶ 19. Berry contends that D-10 explained reasonable doubt and that if he is entitled to have the issue submitted to a jury, an instruction on reasonable doubt must be granted. Anderson v. State, 571 So.2d 961, 964 (Miss.1990). However, the trial court is "under no obligation to grant redundant instructions." Montana v. State, 822 So.2d 954, 961(¶ 26) (Miss.2002). "The refusal to grant an instruction which is similar to one already given does not constitute reversible error." Id.
¶ 20. Jury instruction D-10 is identical to D-2, which was given to the jury. With jury instruction D-10 being cumulative and repetitious, it was properly refused by the trial court. As stated in Montana, a trial judge is under no obligation to grant redundant instructions.
III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE JURY INSTRUCTION D-13, THE SO CALLED "ONE JUROR INSTRUCTION."
¶ 21. Jury instruction D-13 is a form of the "one juror" or so-called "sinker" instruction. This instruction calls upon each juror to stand by his convictions on the evidence, and does not permit any single juror to bring in or stand for any other verdict than one which he was authorized to adopt by law and the evidence in the case. Gee v. State, 183 Miss. 697, 185 So. 203, 205 (1938).
¶ 22. Although the Mississippi Supreme Court, in Edlin v. State, 523 So.2d 42, 49 (Miss.1988), has held that where the jury is not given the single jury instruction, it is reversible error, the denial of instruction D-13 in the present case was not error because it was properly covered by other instructions, including the court's instructions.
¶ 23. In Mallette v. State, the court held that the denial of the one juror instruction was not error because another instruction "did instruct the jury that twelve jurors must agree upon the verdict [and][w]ith that instruction, and considering all instructions together, we are of the opinion that it was not error to refuse Instruction 9-D." Mallette v. State, 349 So.2d 546, 550 (Miss.1977).
¶ 24. After reading all instructions submitted to the court, it is evident that court instruction No. 4 which was given is identical in content to D-13 except for the last sentence which stated, "[i]f there is any juror who is not convinced" beyond a reasonable doubt of the Defendant's guilt, it is his or her duty to vote "NOT GUILTY," even though it may cause a mistrial of this case. It should also be noted that jury instruction D-18 is virtually identical to court instruction No. 4 except for a few words in the beginning sentences. The jury instructions, taken as a whole as dictated in Johnson, adequately inform the jury that all twelve jurors must agree on the verdict. The trial court's denial of jury instruction D-13 was not error since there were other instructions which said the exact same thing.
IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A NEW TRIAL BASED ON PROSECUTORIAL MISCONDUCT.
¶ 25. Berry also argues that, during closing arguments, the prosecutor improperly *406 objected to defense counsel's mentioning Williams's prior burglary conviction.
¶ 26. The standard of review which this Court must apply to lawyer misconduct during closing arguments is "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." Sheppard v. State, 777 So.2d 659, 661(¶ 7) (Miss.2001) (citing Ormond v. State, 599 So.2d 951, 961 (Miss. 1992)).
Attorneys are afforded wide latitude in arguing their cases to the jury, but they are not allowed to employ tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. The purpose of a closing argument is to fairly sum up the evidence. The State should convey those facts which the prosecution asserts a verdict of guilty would be proper. The prosecutor may comment upon any facts introduced into evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts. Counsel cannot, however, state facts which are not in evidence, and which the court does not judicially know, in aid of his evidence.
Flowers v. State, 842 So.2d 531, 553-54 (¶ ¶ 63-64) (Miss.2003) (citations omitted).
¶ 27. In the present case, the record shows that during his closing argument defense counsel mentioned a burglary committed by Williams, the State's confidential source. The district attorney quickly objected on the grounds that defense counsel was arguing matters that were outside the testimony. The argument is as follows:
HOOD (District Attorney): I object he is arguing facts outside the testimony
LIVINGSTON (Counsel for Berry): Your Honor, it's already been testified to.
HOOD: No, sir. The crime he was committed [sic] was never discussed in the facts.
LIVINGSTON: I disagree he admitted that he burglarized.
COURT: I think that was the extent of it however. Objection is noted. It's closing argument.
LIVINGSTON: I would instruct the DA not to interrupt me during my argument.
COURT: The objection is valid as to the specific nature of the crime but there was some testimony about it and objection will be sustained.
LIVINGSTON: Can I talk about him being convicted of a burglary?
COURT: I think that came out. You are free to talk about that.
¶ 28. There was no harm or prejudice to Berry who was permitted to attack Williams's credibility during closing arguments by referring to Williams as a "burglar [and] a thief [and] a dope seller [and] a dope user." Therefore, this issue is without merit.
¶ 29. As a second part to this issue, Berry claims the district attorney was guilty of egregious misconduct because he called defense counsel a "first year law student." Actually, the district attorney never referred to counsel directly, but rather, he simply suggested that a first year law student knows that lawyers are entitled to object to both evidence and argument.
¶ 30. In the record, there is a lack of any type of objection, contemporaneous or otherwise. Accordingly, there can be no error absent a contemporaneous objection preserving the matter for appellate review. Caston v. State, 823 So.2d 473, 502-03 *407 (¶ 102) (Miss.2002); Goree v. State, 750 So.2d 1260, 1262 (¶ 4) (Miss.Ct.App.1999). Because there was no objection in the case sub judice, we do not discuss the merits concerning this issue, however, this Court feels the need to warn prosecutors about such comments which could result in reversible error.
V. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW DEFENSE COUNSEL TO CROSS-EXAMINE A CONFIDENTIAL INFORMANT'S PRIOR CONVICTION.
¶ 31. In this issue, Berry argues in only seven lines that the trial court erred in refusing to allow him to cross examine Williams about his prior convictions. However, in his brief argument, Berry fails to cite any authority for his position.
¶ 32. The Mississippi Supreme Court has stated on numerous occasions that it is under no duty to consider assignments of error when no authority is cited. McDowell v. State, 807 So.2d 413, 425(¶ 35) (Miss.2001); Hoops v. State, 681 So.2d 521, 526 (Miss.1996); Kelly v. State, 553 So.2d 517, 521 (Miss.1989); Brown v. State, 534 So.2d 1019, 1023 (Miss.1988); Harris v. State, 386 So.2d 393 (Miss.1980). The court has also held that it is the duty of an appellant to provide authority and support of an assignment. Id. If a party does not provide this support this Court is under no duty to consider assignments of error when no authority is cited. Hewlett v. State, 607 So.2d 1097, 1106 (Miss.1992); Kelly, 553 So.2d at 521; Brown, 534 So.2d at 1023.
¶ 33. Accordingly, this issue is procedurally barred.
VI. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE'S WITNESS TO NARRATE A VIDEO.
¶ 34. Berry argues that it was error to allow Williams, the State's witness, to explain to the jury what was taking place in the video as the videotape was being played for the jury. He contends that the video spoke for itself.
¶ 35. In reliance on Blue v. State, this Court finds that Williams's narration "was used only for the purpose of showing the jury exactly what was taking placean entirely permissible and helpful activity that is to be distinguished from the circumstances where a witness attempts to place his or her own subjective interpretation of events transpiring in the video based on nothing beyond the witness's own inspection of the contents of the videotape." Blue v. State, 825 So.2d 709, 712(¶ 12) (Miss.Ct.App.2002) (citing Potts v. State, 755 So.2d 521 (¶ ¶ 13-15) (Miss.Ct. App.1999)). In Blue, this Court held that "as long as the witness's testimony is confined to matters actually perceived first-hand there can be no improper prejudice to the defendant to permit the witness to relate those observations to the jury, during their view of the tape, in order to help the jury reach a better understanding of what the witness contends is transpiring on the tape of the witness's own personal knowledge." Id.
¶ 36. Williams was physically present, inside the home of Pulliam, consummating the sale of cocaine. He had first-hand knowledge of the events as they were taking place; therefore, this issue is without merit.
¶ 37. Although the narration was acceptable in this case, trial courts should be aware that there is a danger in allowing someone to narrate on a video because he could be commenting on a section of the video that was not clear. However, even if the evidence is clear as to events unfolding, one is never allowed to comment on something to the extent that his comments change people's minds as to what they actually see.
*408 ¶ 38. THE JUDGMENT OF THE UNION COUNTY CIRCUIT COURT OF THE CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY YEARS, EIGHT YEARS SUSPENDED AND TWELVE YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY $200 IN RESTITUTION IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO UNION COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.