954 So.2d 479 (2007)
Kevin McCOY, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00034-COA.
Court of Appeals of Mississippi.
April 17, 2007.
*482 William L. Bambach, attorney for appellant.
Office of the Attorney General by Jacob Ray, attorney for appellee.
Before MYERS, P.J., IRVING and BARNES, JJ.
IRVING, J., for the Court.
¶ 1. Kevin McCoy was convicted by a jury of sale of cocaine and sentenced by the Lowndes County Circuit Court to life in prison as a habitual offender. Aggrieved, he appeals and asserts (1) that the evidence is insufficient to sustain his conviction, (2) that he suffered ineffective assistance of counsel, (3) that his conviction should be reversed due to prosecutorial misconduct, (4) that the court erred in allowing admission of his prior convictions, (5) that his sentence should be set aside because of the use of a prior conviction that he obtained as a juvenile, (6) that the court erred in refusing to grant McCoy a continuance to obtain private counsel, and (7) that cumulative errors demand a reversal of his conviction.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On March 17, 2004, James Stewart was working as a confidential informant for the Columbus Metro Narcotics Unit. On that day, Stewart and his girlfriend, Wanda Lavendar, met with Agent Eric Lewis and Agent Anita Ray, both of the Narcotics Unit.[1] According to Agent Lewis, Stewart and Lavendar were both searched for contraband. After finding no contraband, the agents outfitted Stewart with a hidden camera to facilitate a controlled buy from McCoy.[2] Stewart was also given two twenty-dollar bills with which to purchase contraband.
¶ 4. After all the pre-buy preparations were done, Stewart and Lavendar went to an OK Foods store in Columbus, Mississippi, where Stewart went to the back of Lavendar's vehicle to wait for McCoy. Conflicting testimony was presented as to whether the agents were able to observe the controlled buy. Before being approached by McCoy, Stewart was first approached by an individual, "Zeke," with whom Stewart had some physical contact that is visible on the video footage of the buy. Stewart claims that Zeke was asking him for a cigarette and that they touched hands because he and Zeke were good friends.[3] McCoy approached Stewart after Zeke left, and Stewart purchased cocaine from McCoy, who requested that Stewart place a twenty-dollar bill in the bed of Lavendar's pick-up truck rather than hand the bill directly to McCoy. After the cocaine purchase, Stewart attempted to purchase marijuana from McCoy with the remaining twenty-dollar bill, but McCoy indicated that he did not have any. After the buy, Stewart and Lavendar went to meet the agents at the post-buy location, where Stewart gave Lewis the purchased cocaine and the remaining twenty-dollar bill. Subsequent tests of the substance indicated that the substance purchased was, in fact, cocaine.
¶ 5. Additional facts, as necessary, will be related during our analysis and discussion of the issues.

*483 ANALYSIS AND DISCUSSION OF THE ISSUES
1. Sufficiency of the Evidence
¶ 6. When reviewing the sufficiency of the evidence supporting a conviction, we look at all the evidence "in the light most favorable to the verdict." Champluvier v. State, 942 So.2d 145, 152(¶ 12) (Miss.2006) (quoting Gleeton v. State, 716 So.2d 1083, 1087(¶ 14) (Miss.1998)). Every favorable inference that may be drawn from the evidence is given to the prosecution. Id. We will reverse only when "the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Id. (quoting Gleeton, 716 So.2d at 1087(¶ 14)).
¶ 7. After reviewing all the evidence in the light most favorable to the State, we find that reasonable jurors could have found McCoy guilty. Although McCoy complains at length regarding the quality of the videotape that was shown to the jury, we note that the jury was entitled to give the video footage (or lack thereof) whatever weight it believed was proper. Id. Furthermore, McCoy's trial attorney pointed out the poor quality of the video footage to the jury during her closing remarks and urged the jury to take that into account in determining whether McCoy was guilty. Clearly, the jury was aware of the footage's flaws and gave it whatever weight the jury believed it deserved.
¶ 8. The video footage was far from the only incriminating evidence presented to the jury. Stewart identified McCoy in court and testified that McCoy was the individual from whom he had purchased cocaine. Although McCoy claims that Stewart's testimony "was contradictory, conflicting, and lacked credibility, and was itself unsupported by the videotape," we note that Stewart's testimony, while containing minor inconsistencies, was largely consistent and was corroborated somewhat by Agent Lewis' testimony. McCoy's trial counsel brought Stewart's credibility and truthfulness into question during cross-examination,[4] and the jury heard all the evidence regarding Stewart's credibility. As the ultimate trier of fact, the jury was entitled to give whatever weight it deemed appropriate to Stewart's testimony.
¶ 9. McCoy also points to the fact that Agent Lewis failed to mention Lavendar in the official report he wrote concerning the buy. Agent Lewis was questioned about this omission at trial and explained that he did not mention Lavendar in order to protect her identity and also because "all she was doing was driving the car because he didn't have a good driver's license. So in order for us to protect her, I didn't want to put her in the report." Clearly, whatever credibility questions this omission raised was pointed out to the jury, which was entitled to give the evidence whatever weight it deemed appropriate.
¶ 10. Finally, McCoy contends that the evidence against him is insufficient because Stewart was allowed to improperly narrate the videotape of the buy. As support, McCoy quotes Berry v. State, 859 So.2d 399, 407(¶ 35) (Miss.Ct.App. 2003), where this Court pointed out the distinction between permissible and impermissible narration of video footage:
[T]his Court finds that Williams's narration "was used only for the purpose of showing the jury exactly what was taking place-an entirely permissible and helpful activity that is to be distinguished from the circumstances where a *484 witness attempts to place his or her own subjective interpretation of events transpiring in the video based on nothing beyond the witness's own inspection of the contents of the videotape." Blue v. State, 825 So.2d 709, 712(¶ 12) (Miss.Ct. App.2002) (citing Potts v. State, 755 So.2d 521 (¶¶ 13-15) (Miss.Ct.App. 1999)). In Blue, this Court held that "as long as the witness's testimony is confined to matters actually perceived first-hand there can be no improper prejudice to the defendant to permit the witness to relate those observations to the jury, during their view of the tape, in order to help the jury reach a better understanding of what the witness contends is transpiring on the tape of the witness's own personal knowledge."
Here, Stewart's testimony was "confined to matters actually perceived first-hand." Nothing in the record indicates that Stewart's narration was a "subjective interpretation . . . based on nothing beyond [his] own inspection of the contents of the videotape." In short, Stewart's narration of the videotape was proper.
¶ 11. While the videotape of the controlled buy in question was not perfect, the evidence was such that a reasonable jury could have found McCoy guilty. Therefore, this contention of error is without merit.
2. Ineffective Assistance of Counsel
¶ 12. McCoy bears the burden of showing that his trial counsel was ineffective. Jones v. State, 920 So.2d 465, 478(¶ 42) (Miss.2006). To prove ineffective assistance of counsel, McCoy must show (1) that his counsel was deficient, and (2) that the deficiency prejudiced his defense. Id. There is a strong but rebuttable presumption "that counsel's performance falls within the wide range of reasonable professional assistance. . . ." Id. (quoting Rankin v. State, 636 So.2d 652, 656 (Miss.1994)). In order to show prejudice, McCoy "must show that but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court." Id.
¶ 13. McCoy specifically asserts that his attorney was ineffective for (1) failing to fully examine the admissibility of McCoy's prior convictions, thus leaving him unable to testify in his own behalf; (2) failing to object to improper conduct by the prosecutor; (3) failing to challenge for cause or use peremptory strikes against various jurors; (4) disclosing confidential information for her own self-interest; and (5) failing to advise McCoy of the effect that his prior convictions would have on his sentencing. For purposes of clarity, we separately address each of these contentions.
Admissibility of Prior Convictions
¶ 14. McCoy contends that his appointed counsel did not fully consider the effect that McCoy's prior convictions would have on his ability to testify. McCoy intimates that if he had been fully apprised of the effect of his convictions, he might have accepted a guilty plea rather than proceed to trial. The record reveals that McCoy's attorney had contemplated the admissibility of the convictions for impeachment purposes. Trial counsel did admit, however, that she was surprised and caught off-guard by the judge's decision, as she believed that the convictions would be inadmissible. While it is clear that trial counsel spent time preparing argument against the admissibility of the convictions, the record before us is silent as to what counsel told McCoy concerning the admissibility of the statements and what impact such communication (or lack thereof) had on McCoy's decision to proceed to trial. Since the record before us is not ripe for review on this point, we find no merit to this issue, but affirm without *485 prejudice to McCoy's right to raise this issue in post-conviction proceedings where sufficient evidence might be produced to allow adjudication of this issue.[5]
Failure to Object
¶ 15. McCoy contends that his trial counsel "failed to object to improper leading questions, improper use of video narration, improper comments during voir dire about the video tape and states [sic] improper comments during closing arguments." McCoy also complains that his trial counsel did not request a continuance after hearing about the presence of Lavendar at the controlled buy for the first time at trial.
¶ 16. As we have already discussed, Stewart's narration of the videotape in question was proper. Therefore, counsel was not deficient for failing to object to the narration. McCoy does not specify exactly which "leading questions" his attorney failed to object to. We note that the record reflects that McCoy's attorney did, in fact, object to the prosecutor's improper use of leading questions during the trial. In any case, McCoy has alleged no prejudice whatsoever that this particular failure might have caused him.
¶ 17. The improper voir dire referred to by McCoy is the following statement made by the prosecutor:
I'm going to go ahead and tell you in this video that we're going to play for you, you're not going to be able to see everything. We're going to play you the video to corroborate the eyewitness in this case. But in this video, you're not going to see drugs changing hands. You're not going to be able to see the actual hand to hand transaction because the camera was positioned such that it wasn't caught on tape.
McCoy does not elaborate further on how this statement was improper or how it prejudiced the outcome of his trial. We note that, even if we were to find that McCoy's counsel were deficient for failing to object to the statement, McCoy has failed utterly to show how the statement prejudiced his defense. There is no evidence that the result of the trial would have been any different had McCoy's attorney objected to the voir dire statements. Therefore, McCoy has failed to meet the second prong of the ineffective assistance of counsel test.
¶ 18. As we discuss below, the prosecutor did make improper remarks during closing argument. Admittedly, these remarks were made without objection from McCoy's attorney. However, also as we discuss below, we find that the remarks, while improper, did not lead the jury to convict McCoy. While McCoy's attorney should have objected to these remarks in a timely fashion, McCoy has failed to show how he was prejudiced by his counsel's failure to object. As we find below, we believe that the evidence against McCoy was such that the jury would have found him guilty, even had the improper remarks not been made. Therefore, this failure on the part of McCoy's counsel caused him no prejudice.
¶ 19. As to counsel's failure to request a continuance after learning of Lavendar's presence, we note that whether to request a continuance is clearly a decision *486 that falls within the ambit of trial strategy. Furthermore, it is not clear what a continuance would have gained McCoy. Trial counsel was able to question Agent Lewis regarding Lavendar's presence and minimal involvement in the buy. McCoy does not assert on appeal that Lavendar herself would have been able to provide any more information, nor does McCoy suggest how a continuance would have benefitted his defense. Therefore, any deficiency on the part of trial counsel with respect to requesting a continuance does not rise to the level of ineffective assistance, as McCoy has shown no prejudice.
Failure to Challenge Jurors
¶ 20. McCoy points to the fact that his trial counsel did not strike several jurors who admitted that they had connections to law enforcement. As support, McCoy cites Mhoon v. State, 464 So.2d 77 (Miss.1985), which he claims is factually similar. However, the Mhoon court, which reversed and remanded Mhoon's conviction due to the number of law enforcement-related jurors who served on Mhoon's jury, noted that the circumstances in Mhoon were quite unusual:
In this particular case, however, the sheer number of law enforcement-connected persons in the jury pool, as well as persons selected as jurors, has worked a great hardship on Mhoon. . . . This Court does not hold that a person engaged in law enforcement, or related by blood or marriage to one engaged in law enforcement, should be per se excluded from jury service. However, in a unique factual situation such as this unusual case, the opportunity for undue influence over the opinions of other jurors was too great a risk.
Id. at 81-82.
¶ 21. In Wilcher v. State, 863 So.2d 719, 755 (¶¶ 133-36) (Miss.2003), the Mississippi Supreme Court faced a situation similar to the one before us. In Wilcher, the appellant asserted ineffective assistance of counsel on the basis that his trial counsel did not use peremptory challenges on various members of the venire who were involved in law enforcement. The court found that Wilcher had failed to prove ineffective assistance of counsel, noting: "`there is no reason why an officer or an officer's relative should not serve on a jury if otherwise qualified to follow the law and the evidence.' There is nothing in the record that indicates that those jurors could not have been, or in fact were not, fair and impartial." Id. at 755 (¶ 135) (citations omitted). Likewise, the jurors in our case indicated that they could be fair and impartial. No evidence has been presented to indicate that any jurors with law enforcement connections were anything other than fair and impartial. In the face of the jurors' statements that they would be fair and impartial, McCoy's attorney did not err in not challenging the jurors for cause or in not using peremptory strikes against them. Furthermore, there is no evidence that any deficiency in counsel's conduct had any impact on McCoy's defense or the outcome of his trial. Therefore, this contention is also without merit.
Disclosure of Information
¶ 22. McCoy criticizes his attorney for the following communication made to the court prior to trial, outside the presence of the jury:
Yes, Your Honor. And accordingly, my clientthere's also a motion pending to make my client a habitual offender and a habitual life offender in fact. And I believetwo things, Your Honor. I believe that that motion will in all likelihood be successful and make my client subject to life imprisonment for this charge. I also believe that there is a *487 high likelihood that at a[sic] least on any of the remaining charges he could also be convicted. And accordingly, the client has declined the plea bargain against my advice and pushed forward to trial. I wanted to make that part of the record.
¶ 23. We note that McCoy has failed to allege any prejudice stemming from this admission by his trial counsel. The statement was made outside the presence of the jury, with only opposing counsel, the judge, and court staff present. Since the statement was made outside the presence of the jury, the only impact the remarks could have had was on sentencing. Since McCoy was sentenced to a mandatory term of life as a habitual offender, we fail to see how the remarks made to the court had any impact on the result of McCoy's trial. Therefore, this contention is without merit as well.
Prior Convictions and Sentencing
¶ 24. As explained further below, we find that McCoy was properly sentenced as a habitual offender to life imprisonment. Therefore, no prejudice occurred due to any deficiency on the part of McCoy's trial counsel. As the excerpt above indicates, McCoy's attorney had informed him that the charges against him carried a possible life sentence, but McCoy opted to go to trial regardless of that risk. Because McCoy is unable to show that he suffered any prejudice as a result of his attorney's actions or inaction, this contention is also without merit.
3. Prosecutorial Misconduct
¶ 25. During Stewart's cross-examination, McCoy's attorney brought Stewart's truthfulness into question and questioned Stewart as to when he got paid for the buy. In an effort to rehabilitate Stewart, the prosecutor initiated the following exchange on re-direct:
Q. You said you were paid after the post-buy meeting. But you weren't paid until after the officers had the opportunity to view the video, were you?
A. Yes, sir.
Q. Yes, you weren't paid?
A. Because, see, you get some good videos and you get some bad ones, which on a bad one you can't get paid because they ain't got no evidence.
Q. They didn't pay you just because you told them you made a buy, did they?
A. Right.
Q. They had to view the video and believe you made a buy?
A. Yes, sir.
McCoy contends that "[t]his was an attempt to sway the jury by showing that Stewart's testimony was believable since the agents found him to be convincing." Although McCoy claims in his appeal brief that this question occurred during the State's direct examination of Stewart, this question actually came during the State's re-direct examination of Stewart. Taken in context, the exchange was an attempt to rehabilitate Stewart and clarify exactly how the controlled buy worked. This questioning by the prosecutor was not improper.
¶ 26. The prosecutor also asked Agent Lewis about how many times Stewart had made undercover buys, finally asking "Do you use informants 72 times if you have reason to feel they're not trustworthy?" Before Agent Lewis answered, McCoy's attorney objected on the ground that the question was an impermissible attempt to bolster Stewart's credibility. The court agreed that the question was "getting pretty close to it. . . ." Agent Lewis never responded to the question, *488 and the prosecutor moved on to a new area of questioning. Had there been no objection and had the prosecutor not moved on in his questioning, we might find this argument by McCoy more persuasive. As the record stands, the prosecutor's questions and Agent Lewis' answers did not constitute an impermissible bolstering of Stewart's credibility.
¶ 27. McCoy also complains that the prosecutor acted improperly in asking the jury to believe Stewart's account of the transaction while questioning his credibility. McCoy contends that the State's position had the effect of "want[ing] the jury to believe that he is a drug user when we evaluate his effectiveness as a confidential informant, but he is not a drug user when we examine his credibility." A review of the State's closing argument reveals that the prosecutor, due to Stewart's impeachment by McCoy's attorney, took the position of admitting to the jury that Stewart had most likely lied about his own past drug use, but that the jury should believe Stewart regardless because Stewart's account of events fit with all the other evidence, and also because Stewart had no reason to lie about whether he had purchased cocaine from McCoy. In context, we do not find that this tactic constituted improper conduct by the State.
¶ 28. Finally, McCoy complains about various remarks made by the prosecutor during closing argument. Misconduct during opening statements and closing arguments is reversible when "the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." Curry v. State, 939 So.2d 785, 789(¶ 13) (Miss.2006) (quoting Sheppard v. State, 777 So.2d 659, 661(¶ 7) (Miss.2000)). Any statement made must be "viewed in context, taking into consideration the circumstances of the case." Id. (citing Haggerty v. Foster, 838 So.2d 948, 962(¶ 41) (Miss.2002)). In order to affirm a conviction despite the presence of an improper remark by a prosecutor, "[i]t must be clear beyond a reasonable doubt, that absent the prosecutor's comments, the jury could have found the defendant guilty." Spicer v. State, 921 So.2d 292, 318(¶ 55) (Miss. 2006).
¶ 29. In this case, the prosecutor made several improper remarks during closing argument. After summarizing the evidence in favor of McCoy's guilt on each element of the indictment, the prosecutor stated: "Ladies and Gentlemen of the jury, I submit to you we have proven every one of these things to you beyond a reasonable doubt. And therefore, at this point, this defendant no longer sits in front of you presumed innocent, rather he sits there guilty of the crime for which he is charged." The prosecutor then concluded his initial closing argument: "This defendant sits before you now a convicted drug dealer, no longer presumed innocent but guilty of selling cocaine." These remarks were clearly in error and were improper. McCoy was presumed innocent until the moment the jury decided otherwise. Unfortunately, the improper comments from the prosecutor did not end there. During his final closing argument, the prosecutor stated:
You're told that a man's future is at stake, asking you to believe that it's somehow your job to protect this defendant. Ladies and Gentlemen, I suggest to you there is more that [sic] one man's future at stake. And it is not your job to protect this defendant. If it is your job to protect this defendant, then it is equally your job to protect those of us who live in this community from people who sell drugs.
*489 Although this excerpt would lead one to believe that defense counsel had suggested to the jury during closing argument that its job was to protect McCoy, a review of the record reveals that no such suggestion was made to the jury by defense counsel. In short, these remarks by the prosecution were made without provocation or justification. Furthermore, the suggestion to the jury that its job was to "protect those of us who live in this community from people who sell drugs," is clearly improper.
¶ 30. These remarks are similar to other remarks that the Mississippi Supreme Court has repeatedly condemned as improper. See Spicer, 921 So.2d at 317-18 (¶¶ 51-56). In Spicer, the prosecutor made the following remarks during closing argument:
And you see, that's why now we are afraid to be good neighbors. Acts like that prevent us from being close to people that we even live near. Acts repaid this way are the reasons that we're strangers with our very next door neighbors. The reason that we don't allow ourselves to associate or let our children out in the front yard is because this is the way we get repaid.
May I submit to you that it might be payback time? May I submit to you that this might be an opportunity for us to say in George County: We can't keep you from doing it, but you will pay the price for doing it. And other people are going to know that you paid the price.
Id. at 317(¶ 51). Like McCoy's attorney, Spicer's attorney did not object when these remarks were made. The Mississippi Supreme Court found that, despite the impropriety of the prosecutor's remarks, the misconduct was not reversible error because "if the offending statement is removed from the record it remains clear, beyond a reasonable doubt, that there was sufficient evidence for the jury to find Spicer guilty of capital murder." Id. at 318-19(¶ 56).
¶ 31. As in Spicer, the prosecutor's statements in this case were improper. Like the Spicer court, we find that the statements "were an attempt to use emotion to overcome possible reluctance in the jury, making a baseless appeal to the jurors that they needed to vote as representatives of the community and not based on the evidence that was before them." Id. at 318(¶ 56). However, also like the Spicer court, we find that, were we to remove the offending statements, it remains clear, beyond any reasonable doubt, that there was sufficient evidence for the jury to find McCoy guilty of the sale of cocaine. Therefore, this contention is without merit.
4. Prior Convictions
¶ 32. Rule 609 of the Mississippi Rules of Evidence governs when prior convictions may be used for impeachment purposes. According to the Rule,
For the purpose of attacking the credibility of a witness,
(1) evidence that . . . (B) a party has been convicted of . . . a crime [that is punishable by death or imprisonment in excess of one year] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the party; and
(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.
M.R.E. 609(a).[6] In determining whether a conviction's probative value outweighs its *490 prejudicial effect, the following factors are to be considered by the court:
(1) The impeachment value of the prior crime.
(2) The point in time of the conviction and the witness' subsequent history.
(3) The similarity between the past crime and the charged crime.
(4) The importance of the defendant's testimony.
(5) The centrality of the credibility issue.
Bush v. State, 895 So.2d 836, 847-48(¶ 29) (Miss.2005) (quoting Peterson v. State, 518 So.2d 632, 637 (Miss.1987)). Each of the factors need not be fully addressed by the court on the record as long as "it is apparent that [it] . . . conduct[ed] a substantive balancing test in line with the spirit of Peterson." Id. at 848(¶ 30). We review a trial court's decision to allow evidence of prior convictions under an abuse of discretion standard. Wilcher, 863 So.2d at 728 (¶¶ 8-10).
¶ 33. McCoy had three prior felony convictions that the court considered at a Peterson hearing outside the presence of the jury. Two of the convictions were for armed robbery, and the last was for possession of cocaine. After hearing arguments from both the State and the defense, the court ruled that the robbery convictions would be admissible for impeachment purposes were McCoy to testify, but that the possession conviction could be referred to only as unnamed "felony," on account of the similarity between the charge that McCoy was on trial for and the possession conviction. In so ruling, the court specifically addressed the Peterson factors and how they related to McCoy's convictions. The court also stated that it would give a limiting instruction to the jury explaining that the evidence was "not evidence of guilt of this offense of sale of cocaine. However, they may be used by the jury in assessing the credibility of the defendant as a witness. . . ." McCoy contends that the court "failed to properly evaluate and balance how severely the admission of the convictions weighed against McCoy's ability to present a defense. . . ."
¶ 34. The court did not abuse its discretion in ruling that McCoy's prior convictions would be admissible for impeachment purposes. As the court pointed out, McCoy's credibility would be "central," as McCoy's testimony presumably would be in direct opposition to Stewart's. Under such circumstances, the court noted that "the credibility issue will be central as to whether the jury is to believe the confidential informant, who has already been questioned about his prior criminal activity. . . ." After taking the Peterson factors into account, we find that the court did not abuse its discretion in finding that the probative value of the prior convictions outweighed their prejudicial effect.
5. Use of Convictions Entered While Juvenile
¶ 35. McCoy contends that the convictions that were used to enhance his status to that of a habitual offender were incurred when he was under the age of eighteen, and that "they should not have been allowed to enhance his sentence as `habitual offender.' This is particularly the case when the offenses occurred prior to when the legislature made 17 and 18-year-olds accountable under Mississippi Code Annotated 1972, as amended Section 43-21-151(2)." McCoy also contends that defense counsel improperly did not inquire as to what McCoy was told about "habitual status" when he received his earlier convictions. *491 The State contends that this argument essentially asks this Court to collaterally attack the validity of McCoy's prior convictions.
¶ 36. We find no merit to McCoy's contentions. We note that McCoy has provided no case law to support his assertion that his prior convictions should not have been used to enhance his habitual offender status. Furthermore, a review of the prior convictions used for enhancement shows that McCoy was treated as an adult in those convictions. If McCoy wishes to challenge whether he should have been treated as an adult in the prior convictions, that challenge would constitute a collateral attack on the validity of those judgments. Unless and until McCoy successfully challenges the validity of the prior offenses, his conviction as a habitual offender will stand in this case.
6. Court Inquiry Into Choice of Counsel
¶ 37. McCoy contends that the court erred in not inquiring as to whether he was satisfied with his appointed counsel, in not granting a continuance for McCoy to retain private counsel, and in not informing McCoy of his right to proceed pro se.
¶ 38. The record reveals that, on the morning of trial, McCoy's appointed counsel informed the court that McCoy had told her that he had retained paid counsel in the form of William Bambach, now McCoy's appellate counsel. The court gave McCoy's appointed counsel an opportunity to contact Bambach to see if he was representing McCoy, but she was not able to reach Bambach. The court noted that appointed counsel was the counsel of record for McCoy and that no other counsel had ever made an appearance on behalf of McCoy. Trial then proceeded.
¶ 39. McCoy cites Henley v. State, 729 So.2d 232 (Miss.1998) as support and claims that he was entitled to be informed of his right to represent himself. In Henley, the defendant's trial lasted two days. Id. at 236(¶ 12). At the end of the first day of the trial, Henley informed the court that he was unhappy with the performance of his court-appointed lawyer, whom he claimed had acted "hostile" to him. Id. Thereafter, the court informed Henley that he was entitled to effective counsel, but not the counsel of his choice, and the court gave Henley the choice of either proceeding pro se with his attorney as a guide or continuing with primary representation provided by the court-appointed attorney. Id. at 236 (¶¶ 15-16). Although the trial court found that Henley was not competent to represent himself, the court allowed Henley to do so after Henley again refused to proceed with his court-appointed attorney. Id. at 236-37(¶ 17). The attorney was ordered to remain in the courtroom as an advisor to Henley. Id. at 237(¶ 17).
¶ 40. The Henley court noted that Henley's court-appointed attorney was competent, and that Henley's dispute with the attorney concerned trial strategy rather than a personal conflict. Id. at 237(¶ 21). The Henley court also noted that Henley himself had "expressed a desire to conduct, at least part of, his own defense." Id. at 237(¶ 20). Under the circumstances, the court found no merit to Henley's contentions that the trial court erred in allowing Henley to continue pro se with advisement from his court-appointed attorney. Id. at 237-38(¶ 23).
¶ 41. McCoy claims that the trial court in his case should have inquired as to "McCoy's satisfaction with his appointed counsel" and informed McCoy "that he had the right to represent himself in this trial." We note that the situation here is notably *492 different from the situation in Henley. In Henley, the defendant indicated dissatisfaction with his appointed counsel and eventually indicated that he would prefer to proceed pro se. By contrast, there is no evidence in the present record that McCoy was dissatisfied with his counsel or that he wished to proceed pro se. The first mention of McCoy's possible retainment of Bambach was prior to voir dire, when McCoy's trial counsel told the court: "Mr. McCoy has informed me that Mr. Bambach is his attorney and is supposed to be trying this case." Nothing in the exchange indicated that McCoy was dissatisfied with his appointed attorney. Later, after opening statements had been made, the following exchange occurred outside the presence of the jury:
[BY DEFENSE ATTORNEY]: Your Honor, on behalf of my client, my client has instructed me and asked me to make a motion to the Court for a continuance. My client has advised me that he has retained counsel and that he wishes his  let me be accurate. His family has retained counsel on his behalf. He is asking me to request from the Court a continuance in order to allow his retained counsel to properly appear. I'm making that motion. I've advised my client that the Court had advised him yesterday as I did that retained counsel would have to appear today to represent him. But I am making that motion at the request of my 
[BY THE COURT]: Who is this retained counsel?
[BY DEFENSE ATTORNEY]: Allegedly it's Mr. Bambach, Your Honor.
[BY THE COURT]: Bill Bambach?
[BY DEFENSE ATTORNEY]: Yes, Your Honor. And so I'm making that motion pursuant to my client's request.
[BY THE COURT]: He has not entered an appearance. He has not 
[BY DEFENSE ATTORNEY]: And he has not contacted me, Your Honor, nor made any written motions. And Your Honor, I advised 
[BY THE COURT]: So he is not this client's counsel in this case. And if that is by way of a motion for a continuance, it's overruled.
¶ 42. After the court pronounced its sentence on McCoy after trial, McCoy asked if he could "say what I got to say." The court allowed McCoy to speak, and McCoy stated the following: "Well, I mean, what about my lawyer? My paid lawyer couldn't step in? The information got to me he was denied." Shortly thereafter, McCoy's trial counsel stated: "I spoke to Mr. Bambach personally yesterday, and he indicated to me that he in fact  and I explained to Mr. McCoy that [neither] the Court nor myself could mitigate relations between other clients and lawyers. Mr. Bambach explained to me that he had not been retained." (emphasis added). Therefore, the record indicates that McCoy never indicated, even when given the opportunity to do so posttrial, that he was displeased with the performance of his court-appointed attorney. There is certainly no indication whatsoever in the record that McCoy desired to represent himself rather than proceed with his appointed counsel. Furthermore, the record indicates that Bambach actually had not been retained as McCoy's counsel for trial.
¶ 43. Under the circumstances, the court did not err in ordering McCoy to proceed to trial with his court-appointed attorney. No other attorney had ever entered an appearance or filed a motion on McCoy's behalf, and appointed counsel indicated that no other attorney had ever contacted her in regard to McCoy's representation. *493 The court was not required to question McCoy as to his satisfaction with his appointed counsel in the absence of any indication that McCoy was dissatisfied with his attorney. The court also was not required to inform McCoy of his right to proceed pro se, as McCoy had never indicated any problem with his appointed counsel and had not indicated any desire to proceed pro se.
¶ 44. This contention of error is also without merit.
7. Cumulative Error
¶ 45. While McCoy was entitled to a fair trial, criminal defendants are not entitled to perfect trials. Wilson v. State, 936 So.2d 357, 365(¶ 24) (Miss.2006). "However, even though not reversible in themselves, the cumulative impact of nonreversible errors may . . . require reversal." Id. (citing Byrom v. State, 863 So.2d 836, 847 (¶¶ 12-13) (Miss.2003)). Although we have found that conduct by the prosecutor in this case rose to the level of harmless error, we have not found any other errors, harmless or otherwise, that would favor reversal of McCoy's conviction. Therefore, there is no cumulative error that impacted McCoy's right to a "fundamentally fair and impartial trial," and this contention of error is without merit. Byrom, 863 So.2d at 847(¶ 13).
¶ 46. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Lavendar had to drive for Stewart because his driver's license had been suspended.
[2] Testimony at trial indicated that Stewart made numerous other buys on March 17, 2004, from other individuals.
[3] Stewart testified that Zeke passed away some time prior to the trial.
[4] During cross-examination, McCoy's attorney asked Stewart whether he had a history of drug use. Stewart denied ever having used drugs and was then impeached with prior sworn documents where he had indicated a history of illegal drug use.
[5] Rule 22(b) of the Mississippi Rules of Appellate Procedure states: "Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record." (emphasis added). The rule then goes on to indicate that if trial counsel and appellate counsel are different, the failure to raise such an issue on direct appeal waives that issue for consideration through post-conviction proceedings.
[6] Rule 609(b) limits the use of convictions that are more than ten years old. McCoy's convictions do not fall into that category.